**UNITED STATES of America, Appellee,**

v.

**Luis A. MARTINEZ, Defendant,**

**Alexis Miranda Ortiz, also known as Alexis Pacheco, Defendant–Appellant.**

**No. 618, Docket 92–1461.**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1992.

Decided March 8, 1993.

Kenneth D. Wasserman, New York City, for defendant-appellant.

Orin S. Snyder, Paul G. Gardephe, Asst. U.S. Attys., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., of counsel), for appellee.

Abraham L. Clott, New York City (The Legal Aid Society, New York City, of counsel), filed a brief amicus curiae on behalf of the defendant-appellant.

Before: PIERCE, CARDAMONE, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Alexis Miranda–Ortiz ("Ortiz") appeals from a judgment of the United States District Court for the Southern District of New York (Mukasey, *J.*) imposing a minimum ten-year sentence pursuant to 21 U.S.C. § 841(b)(1)(A) (1988) following Ortiz's conviction for conspiracy to distribute over five kilograms of cocaine in violation of 21 U.S.C. § 846 (1988). In an earlier appeal, this Court affirmed Ortiz's conviction but vacated the original sentence and remanded for resentencing. *See United States v. Miranda–Ortiz*, 926 F.2d 172 (2d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 347, 116 L.Ed.2d 287 (1991) ("*Ortiz I*"). On appeal, Ortiz argues that he should not be held accountable for the amount of cocaine distributed in the conspiracy prior to his participation in it, because he had no reasonable knowledge of the amount that had been sold.

For the reasons set forth below, the judgment is vacated and the case remanded for proceedings consistent with this opinion.

## BACKGROUND

Ortiz met co-defendant Luis Martinez in a restaurant in late 1987. The two men used cocaine together, and Ortiz told Martinez that if Martinez should ever need drugs he should call Ortiz. The two men exchanged beeper numbers. A year later, they inadvertently met again at a movie theater, and Ortiz again mentioned that Martinez should call Ortiz if Martinez needed drugs. As with the first meeting, the two exchanged beeper numbers and this time also traded telephone numbers. During these meetings, they did not discuss drugs with any degree of specificity as to amounts.

Martinez had been supplying George Zlotkiewicz with cocaine since 1985, two years before Martinez met Ortiz. By November 29, 1988, Martinez had sold Zlotkiewicz cocaine four or five times, each sale involving approximately one kilogram. Martinez had obtained all of this cocaine from a single supplier, Sergio Gil. There is nothing in the record to indicate that Ortiz knew specifically about these transactions.

On November 28, 1988, Zlotkiewicz asked Martinez to sell him another kilogram of cocaine. Unbeknown to Martinez, Zlotkiewicz at this time was a government informant, the result of a plea bargain stemming from his October 1988 arrest for selling cocaine. Martinez agreed to supply Zlotkiewicz, and said that he would call Gil, his source. When Gil was unable to supply the kilogram of cocaine, Martinez called Ortiz.

Martinez and Ortiz met the next day. Martinez asked Ortiz if he could supply a kilogram of cocaine that day, explaining

that his regular source was unable to supply it. Ortiz asked if the buyer was reliable, and Martinez responded that he had known Zlotkiewicz for four years and that Zlotkiewicz was trustworthy. Ortiz agreed to obtain the cocaine.

When the two attempted to deliver the cocaine, they were arrested. They were both indicted originally in December 1988 for one count of possession with intent to distribute over 500 grams of cocaine, and one count of conspiracy to distribute over 500 grams of cocaine. A superseding indictment was filed in July 1989, realleging the distribution count and charging that the conspiracy had begun in 1985 with the sales by Martinez to Zlotkiewicz. The superseding indictment also specified that the object of the conspiracy was distribution of more than five kilograms of cocaine. It added as overt acts the sales by Martinez to Zlotkiewicz from 1985 to 1988.

Martinez pleaded guilty to the distribution count and agreed to cooperate with the government. Ortiz proceeded to a jury trial in the United States District Court for the Southern District of New York (Mukasey, *J.*), and was convicted on all counts. The district court sentenced Ortiz to two concurrent terms of 151 months' imprisonment, finding that his offense level under the United States Sentencing Guidelines ("Guidelines") should be calculated on the basis of the conspiracy's distribution of five or more kilograms of cocaine. Ortiz appealed to this Court. *Ortiz I,* 926 F.2d 172. On appeal, he made various challenges to both the jury verdict and his sentence. We affirmed the conviction, finding that the jury had sufficient evidence to convict him of the conspiracy even though he was not involved in the sales by Martinez to Zlotkiewicz. *Id.* at 176. Primarily, we found that a reasonable jury could infer that Ortiz knew there was a conspiracy from the exchange of beeper numbers and the fact that Martinez regularly supplied Zlotkiewicz. *Id.*

We did, however, vacate the sentence and remand to the district court. *Id.* at 178–79. In doing so, we concluded that the fact that Ortiz joined the conspiracy did not make him culpable at sentencing for all the acts of the conspiracy. *Id.* We stated:

> [W]hen a late-comer has been convicted of a broad-ranging narcotics conspiracy, his "relevant conduct" may not be the same as the relevant conduct of those who were members of the conspiracy at all stages. The late-entering coconspirator should be sentenced on the basis of the full quantity of narcotics distributed by other members of the conspiracy only if, when he joined the conspiracy, he could reasonably foresee the distributions of future amounts, or knew or reasonably should have known what the past quantities were.

*Id.* at 178. The district court had not made findings that Ortiz "knew or reasonably should have known that Martinez's prior sales to Zlotkiewicz had totaled four or more kilograms." *Id.* We remanded for resentencing and a determination of whether Ortiz reasonably should have known about the amounts Martinez had sold, noting that the present record would not have supported such a finding. *Id.*

On remand, the government brought to the district court's attention 21 U.S.C. § 841(b)(1)(A), which requires a minimum 10–year sentence for convictions of conspiracy "involving" more than 5 kilograms of cocaine. The district court imposed this 10–year minimum, since it is higher than what Ortiz would have received under the Guidelines. *See* U.S.S.G. § 5G1.1(b); *United States v. Larotonda,* 927 F.2d 697, 698 (2d Cir.1991) (*per curiam*) (statutory minimums take precedence over Guideline sentences). Ortiz now appeals the resentencing, arguing that: (1) the district court should have followed the law of the case and imposed the sentence under the Guidelines; and (2) even under § 841(b), the government should have to prove that he knew or reasonably should have known the amounts of Martinez's prior sales.

## DISCUSSION

### I. *The Law of the Case*

As a preliminary matter, we address Ortiz's contention that the district court failed to follow the law of the case by

sentencing him under § 841(b) instead of making the findings under the Guidelines as ordered by this Court. As a general rule, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 953 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). However, the doctrine "is, at best, a discretionary doctrine which 'does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided.'" *United States v. Birney,* 686 F.2d 102, 107 (2d Cir.1982) (quoting *Dictograph Products Co. v. Sonotone Corp.,* 230 F.2d 131, 134–36 (2d Cir.), *cert. denied,* 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956)).

Had the district court sentenced Ortiz under the Guidelines, then the law of the case would certainly have bound the district court to this Court's opinion in the first appeal. The statutory minimum under 21 U.S.C. § 841, however, had never been brought before this Court or the district court. This was because the original sentence of the district court was higher than the statutory minimum, rendering the minimum irrelevant to consideration. Therefore, the district court was correct in considering the applicability of § 846, since it only became an issue because of this Court's ruling in the first appeal.

## II. *The Reasonable Knowledge Requirement of § 841(b)*

■ Ortiz next contends that he should not be sentenced to the statutory minimum under 21 U.S.C. § 841(b) for conspiracy to distribute over five kilograms of cocaine. He argues that he could not have reasonably known that Martinez had sold that amount of cocaine prior to their transaction. Because reasonable knowledge of relevant conduct is considered under the Guidelines, Ortiz contends that it should also be considered for the statutory minimum. The government responds that Ortiz's reasonable foreseeability as to the amounts of Martinez's transactions is not

required under § 841(b) as it is under the Guidelines.

The government directs this Court's attention to the cases where we have found that the statutory minimums of § 841(b) apply regardless of the defendant's specific knowledge of the amounts in possession. *See United States v. Pineda,* 847 F.2d 64, 65 (2d Cir.1988) (*per curiam*); *United States v. Collado–Gomez,* 834 F.2d 280, 281 (2d Cir.1987) (per curiam), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). Other circuit courts are in accord. *See, e.g., United States v. Pinto,* 905 F.2d 47, 50 (4th Cir.1990); *United States v. Holmes,* 838 F.2d 1175, 1178 (11th Cir.), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988); *United States v. Klein,* 860 F.2d 1489, 1500–01 (9th Cir. 1988); *United States v. Normandeau,* 800 F.2d 953, 956 (9th Cir.1986).

Although those cases do deal with § 841(b) statutory minimums and whether the defendant knew about quantities of narcotics involved, they do not deal with conspiracy. This situation is unlike that presented in *Collado–Gomez,* where we stated:

> Just as those who possess drugs for sale must bear the risk of determining how close to a school they are ... such dealers must *bear the risk of knowing what drugs they are dealing* ... In light of Congress's clear, unequivocal, and rational purpose, ... this allocation of risk does not offend due process.

*Collado–Gomez,* 834 F.2d at 281 (emphasis added). Here, though, the issue is not whether Ortiz knew what drugs he was dealing or what amounts he was dealing, but whether he knew about the amounts of drugs that Martinez was dealing up to two years before Ortiz ever met Martinez.

Ortiz argues that conspiracy is different from straight substantive possession. He contends that extending the reasoning of *Collado–Gomez* to this case would hold defendants strictly liable not for what they conspire to do, but for what any individual they conspire with conspires to do. Demanding that defendants "bear the risks" of their activity is far different from de-

manding that for sentencing purposes they be aware of the amounts of drugs sold in transactions that took place well before they ever got involved.

This distinction points up the inherent intricacies with sentencing individuals of conspiracies. An individual sentenced for possession of narcotics is sentenced for the full quantity in his possession. Title 21 U.S.C. § 841(a) provides in relevant part that "it shall be unlawful for any person knowingly or intentionally ... to ... distribute ... or possess with intent to ... distribute ... a controlled substance." Section 841(b) then provides for sentencing minimums based on the quantities in possession. Similarly, the Guidelines make the individual accountable for the amounts in his possession. See U.S.S.G. §§ 1B1.3(a)(1)(A), 2D1.1(a)(3).

This scheme, however, becomes more complicated when dealing with conspiracy. Often, an individual is charged with a wide-ranging conspiracy in which he only played a small part. For example, drug couriers are often charged with conspiracy for an entire narcotics operation, even if they only possessed a small amount. Title 21 U.S.C. § 846 provides that the penalty for conspiracy is the penalty provided for the substantive offense that was the "object" of the conspiracy. Section 846 does not, however, prescribe how the § 841(b) minimums apply in the context of a conspiracy, and it is unclear whether the "object" of the conspiracy is the amount the individual actually knew about or the amount sold by the members of the conspiracy as a whole. The Guidelines clearly resolve this issue by providing that an individual charged with conspiracy will only be sentenced for conduct that was reasonably foreseeable by the individual. However, there is no similar provision in § 841(b) regarding the statutory minimum.

The government argues that Congress did not include a reasonably foreseeable requirement in § 841(b) or § 846. The government seizes on this discrepancy, arguing that the reasonably foreseeable requirement of the Guidelines is not applicable under the statutory minimum of § 841(b). Therefore, according to the government, the statutory minimums for the five kilograms charged apply regardless of Ortiz's reasonable knowledge of the conduct of other members of the conspiracy. The government points out that § 846 states that a defendant guilty of conspiracy should be sentenced as if he were in possession of the amounts that were the object of the conspiracy. Under the government's literal interpretation, Ortiz is responsible for all five kilograms, since the instant conspiracy charged includes the four kilograms sold by Martinez before the sale by Ortiz. Therefore, according to the government, Ortiz's lack of knowledge as to the quantity of narcotics sold by Martinez is irrelevant. We disagree.

The government misinterprets the meaning of 21 U.S.C. § 846, which is meant to ensure that a defendant convicted of possession of a certain amount and conspiracy to possess that certain amount of narcotics can be sentenced to equal punishment on either count. Section 846 does not subject the defendant to liability for any crimes committed by any other members of the conspiracy, regardless of the defendant's knowledge about those crimes. To allow the government's interpretation would be to expand dangerously the scope of conspiratorial culpability.

Only one Circuit has addressed this issue, and that court ruled against the government's argument. *United States v. Jones*, 965 F.2d 1507, 1516–17 (8th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992). As with this case, *Jones* involved a defendant who was convicted of a conspiracy to distribute large amounts of cocaine even though his involvement was limited to only certain small amounts. He was sentenced by the district court to the ten year minimum of 21 U.S.C. § 841(b)(1)(A).

The Eighth Circuit held that the same standards governing the sentencing under the Guidelines should apply to the statutory minimums of § 841(b). *Jones*, 965 F.2d at 1517. Accordingly, the defendant could only be sentenced for the full scale of the conspiracy if the district court found "by a

preponderance of the evidence" that the sales by others were in furtherance of the conspiracy and reasonably foreseeable by the defendant. *Id.* The Court went on:

> In multi-level drug networks, defendants may aid conspiracies that span far beyond their actual participation. For activities of a co-conspirator to be "reasonably foreseeable" to a defendant, they must fall within the scope of the agreement between the defendant and the other conspirators.... Thus, if a defendant agrees to aid a large-volume dealer in completing a single, small sale of drugs, the defendant will not be liable for prior or subsequent acts of the dealer that were not reasonably foreseeable.

*Id.* However, the Court did not explain why it was adopting the Guidelines' standard of culpability for the § 846 statutory minimums. In fact, there are several bases for extending the standard to § 846.

A review of the legislative history of 21 U.S.C. § 846 reveals that the intent of Congress in enacting that section was to ensure that a defendant who is charged with only conspiracy not be in a better position for sentencing than one who is charged solely with possession of the same amount of narcotics. This reflects the philosophy of Congress that the large-scale drug conspiracies are a more significant threat to society than the activities of individual drug dealers. To sentence the individual drug dealer who is caught holding narcotics to a greater sentence than the large-scale conspirator who never physically touches the narcotics would defeat the aims of law enforcement.

Before Congress amended § 846 in 1988, the section was construed under the rule of *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The Supreme Court held in *Bifulco* that § 846 did not incorporate a special parole term because the statute did not expressly require one. *See also United States v. Moon*, 926 F.2d 204, 210 (2d Cir.1991). This led to the anomaly of having minimum sentences for base offenses, but not for conspiracies to commit base offenses. In the context of large-scale drug trafficking,

this meant that lower level drug dealers would conceivably be subject to stiffer penalties than the higher echelon ringleaders. *See, e.g., United States v. Campbell*, 704 F.Supp. 661, 663–64 (E.D.Va.1989).

Congress responded to this by amending § 846 to include the "shall be subject to the same penalties as those prescribed for the offense" language. 21 U.S.C. § 846. The only published legislative history on this amendment came from Senator Joseph Biden:

> Section 6470(a) amends 21 U.S.C. 846 and 963 to assure that all the penalties applicable to an underlying drug offense also apply to an attempt or conspiracy to commit the offense....
>
> By striking the "may not exceed" language and replacing it with the phrase "shall be subject to the same penalties", Congress would make clear that any penalty that may be imposed for a substantive drug offense may be imposed for an attempt or conspiracy to commit that offense.

134 Cong.Rec. S17,260–02 (daily ed. November 10, 1988) (statement of Sen. Biden). This statement strongly suggests that the purpose of § 846 as amended was to synchronize the penalties for conspiracies and their underlying offenses.

Most importantly, there is nothing in the legislative history to indicate that Congress intended the revision to expand the accountability of defendants *beyond* their substantive offenses. That is the position argued by the government in this case. Moreover, there is nothing to indicate that Congress intended to abandon the theory of conspiratorial liability that has descended from *Pinkerton v. United States*, 328 U.S. 640, 646–48, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946) (establishing rule that conspirator could be held accountable for any acts reasonably foreseeable in furtherance of the conspiracy). The theory of *Pinkerton* liability is expressed in the Guidelines and in the first *Ortiz* appeal: although an individual can be convicted of participation in a conspiracy, he should not be sentenced for certain conspiratorial acts unless there is proof that he knew or

should have known about the details of these conspiratorial acts. *Ortiz,* 926 F.2d at 178; U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Lanni,* 970 F.2d 1092, 1093 (2d Cir.1992) (noting the broader standard for finding a defendant guilty of conspiracy than for sentencing that defendant).

If the government's argument were to prevail, § 846 would effectively eviscerate the Guideline's approach to fixing accountability in drug conspiracies. Under the government's approach, any low-level drug courier could be sentenced under § 846 not only for the drugs he carried (i.e. the holding in *Collado–Gomez*) but for any drugs that were sold in the conspiracy by any members of the conspiracy regardless of the courier's involvement with those sales. This is directly counter to the intent of the Sentencing Commission as expressed in the Guidelines, which became effective November 1, 1987, and if Congress had intended to enact such a drastic revision of the Guidelines in amending § 846 in 1988 that intent would surely have been clearly expressed.

That this approach would be devastating to the Guidelines approach is clearly demonstrated in a review of the Guidelines Commentary for U.S.S.G. § 1B1.3(a)(1)(B). Application Note 2(c) gives three illustrations (illustrations three, five, and seven) where defendants with only limited involvement in ongoing narcotics conspiracies are held accountable solely for the involvement and not for the entire conspiracy. Under all three scenarios, the government's proposed interpretation of § 846 would result in the exact opposite outcome. There is no indication that Congress intended in its revision of § 846 to drastically undermine the Guidelines in this fashion.

We find that Congress did not intend to overrule the Guidelines in its revision of § 846 and require strict liability in any case where an individual small-time dealer becomes associated with a large-scale conspiracy. The Guidelines, in the tradition of conspiracy law since *Pinkerton,* require reasonable foreseeability in order to hold a conspirator accountable for the acts of a coconspirator. This is not inconsistent with § 846, which only requires that a conspirator be sentenced to the same penalty applicable to the underlying conduct. Thus, we hold that the same "reasonable foreseeability" standard of the Guidelines must be applied to sentencing for conspiracy under 21 U.S.C. § 846.

For these reasons, we find that Ortiz cannot be sentenced for the four sales made by Martinez alone unless a preponderance of the evidence shows that Ortiz knew or reasonably should have known about the quantities of cocaine that Martinez had sold. Accordingly, we remand to the district court for resentencing and determination of whether Martinez could have reasonably foreseen the amounts of cocaine sold by Martinez.

Although Ortiz has argued that his sentencing should not be remanded to Judge Mukasey, we will not remand a case to a new district judge except in extraordinary cases. *See Sobel v. Yeshiva Univ.,* 839 F.2d 18, 37 (2d Cir.1988), *cert. denied,* 490 U.S. 1105, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989). Here, Ortiz has not shown that Judge Mukasey has demonstrated any bias against him, and "it would be a poor use of judicial resources to require another district judge to take on the resentencing task." *United States v. Jacobs,* 955 F.2d 7, 10 (2d Cir.1992) (*per curiam*). We are confident that Judge Mukasey will sentence Ortiz fairly and in accordance with this decision.

## CONCLUSION

The judgment of the district court is vacated, and the matter remanded to the district court for resentencing on both counts in a manner not inconsistent with this opinion.