UNITED STATES of America, Appellee,

v.

William PICO, Defendant–Appellant.

No. 1396, Docket 93–1001.

United States Court of Appeals,
Second Circuit.

Argued April 21, 1993.

Decided Aug. 9, 1993.

Thomas G. Dennis, Federal Public Defender D. Conn., Hartford, CT., for defendant-appellant.

Theodore B. Heinrich, Asst. U.S. Atty., District of Connecticut (Albert S. Dabrowski, U.S. Atty., D. Conn., of counsel), for appellee.

Before: TIMBERS, KEARSE, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant William Pico appeals from a judgment of conviction entered in the United States District Court for the District of Connecticut (Jose A. Cabranes, *Chief Judge*), following Pico's plea of guilty to conspiracy to import cocaine into the United States, in violation of 21 U.S.C. § 963 (1988). Pico was apprehended after swimming alongside a ship anchored in Bridgeport harbor at midnight and retrieving a large duffel bag. Federal agents had discovered 51 kilograms of cocaine on this ship immediately prior to Pico's midnight swim, and had filled the duffel bag retrieved by Pico with a small amount of cocaine and a substantial amount of substituted material.

The plea agreement signed by Pico stated that, because the crime involved more than 5 kilograms of cocaine, the offense carried a mandatory minimum penalty of 10 years imprisonment. During Pico's sentencing hearing, he did not object to the Pre–Sentence Report. Pico's base offense level was predicated on the 51 kilograms of cocaine seized on the ship. Pico also did not object to the applicability of the mandatory minimum 10 year sentence required by 21 U.S.C. § 960(b)(1)(B) (1988). The district court sentenced Pico to 121 months imprisonment, to be followed by a lifetime period of supervised release and a special assessment of $50.

Pico appealed the sentence to this Court, arguing that the district court erred in imposing the lifetime period of supervised release. This Court held that the lifetime period of supervision was not within the guideline range, and consequently vacated and remanded for resentencing. *United States v. Pico*, 966 F.2d 91 (2d Cir.1992) (per curiam).

Prior to resentencing, Pico moved for a ruling that the 10 year mandatory minimum should not be imposed because: (1) the indictment failed to allege that more than five kilograms were involved in the offense; and (2) the government had failed to establish a sufficient factual basis to require the imposition of a 10 year mandatory minimum sentence. The district court denied Pico's motion, and resentenced Pico to 120 months' imprisonment, a five year term of supervised release, and a $50 special assessment.

On appeal, Pico asserts the same contentions raised below. In addition, Pico relies on this Court's recent decision in *United States v. Martinez*, 987 F.2d 920 (2d Cir. 1993) (Altimari, *J.*), to bolster his latter contention that the government failed to establish that he conspired to import more than five kilograms of cocaine. Pico claims that *Martinez* mandates a finding that he cannot be held responsible for the 51 kilograms of cocaine found to be the object of the conspiracy. According to Pico, *Martinez* applies because like the defendant in *Martinez*, he had no reasonable knowledge of the amount of drugs involved in the conspiracy.

For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

On June 24, 1991, a confidential informant notified United States Customs Agents and other law enforcement authorities that a substantial amount of cocaine was aboard a ship bearing the name "Pocohantas." This ship had recently docked in Bridgeport, Connecticut. Aboard the Pocohantas, agents found 51 kilograms of cocaine and a black duffel bag next to it. The agents replaced the cocaine with substituted materials, and filled the duffel bag with a small amount of cocaine and a significant amount of the substituted material.

The informant disclosed that he had been given instructions from the drug traffickers to meet an unidentified individual at a telephone booth near the ship at 11:30 P.M. on

June 24, 1991, so that he could get instructions on lowering the cocaine over the side of the ship at midnight. However, the informant was unsuccessful in his attempt to meet the unidentified individual and returned to the ship.

At approximately the same time, Pico and a co-defendant arrived at the dock near the Pocohantas. At midnight Pico got out of the car, entered the water, and swam up to the side of the ship. While he was alongside the ship, Pico called out to "throw it" over. Using a rope, an agent on board the ship lowered the duffel bag, which now contained a small amount of cocaine mixed with other substituted materials. There is no indication in the record concerning how much this bag weighed. Pico removed the bag from the rope and replaced it with another bag containing $65,000 in cash.

Pico swam back to shore where he was met by a co-defendant. They carried the duffel bag back to the car, placed it in the trunk, and began to drive away, at which time they were apprehended.

Pico admitted to law enforcement officials that he had swam alongside the ship to obtain the package and that he and his co-defendant had each been paid $30,000 to pick up the package. Pico recognized that he was helping to facilitate the importation of illegal drugs, but claimed that he was unaware of the amount of drugs involved.

On June 27, 1991, a grand jury returned a four-count indictment against Pico and his co-defendant. They were charged with: (1) conspiring to import cocaine in violation of 21 U.S.C. § 963; (2) importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a)(1); (3) conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846; and (4) possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Pico agreed to plead guilty to the first count, conspiring to import cocaine. The plea agreement stated that, because the offense "involve[d] more than 5 kilograms of cocaine, [it] carrie[d] a mandatory minimum penalty of 10 years' imprisonment and a maximum penalty of life imprisonment and a $4,000,000 fine." The Petition to Enter [a] Plea of Guilty, filed by Pico, also contained a provision that the offense carried a mandatory minimum 10 year sentence. Similarly, at the plea proceeding, the district court informed Pico that the offense carried a mandatory minimum 10 year sentence pursuant to 21 U.S.C. § 960(b)(1)(B).

During the sentencing hearing, Pico did not object to the Guideline calculation based upon 51 kilograms nor did he object to the applicability of the mandatory minimum 10 year sentence. The district court sentenced Pico to 121 months' imprisonment—the minimum under the applicable Sentencing Guideline's range and one month more than the minimum required by statute—to be followed by a lifetime period of supervised release. A special assessment of $50 was also imposed.

Pico appealed the sentence to this Court, and notwithstanding the filing of an *Anders* brief, we ruled that "[t]he only supervised release term that was consistent with both the statute and the Guidelines was five years." *United States v. Pico*, 966 F.2d at 92. Because the lifetime period of supervision was not within the Guideline range, this Court remanded for resentencing. *Id.*

Prior to resentencing, Pico moved for a ruling that the 10 year mandatory minimum should not be imposed because the indictment had failed to allege that more than five kilograms were involved. Pico also claimed that the government had not proved that the case involved more than five kilograms of cocaine. The district court denied the motion. The district court subsequently sentenced Pico to 120 months' imprisonment, a five year term of supervised release, and a $50 special assessment.

Pico now appeals to challenge the propriety of this sentence.

## DISCUSSION

I. *Notice of the Mandatory Minimum Sentence*

■ On appeal, Pico first contends that the ten year mandatory minimum sentence, pursuant to 21 U.S.C. § 960(b)(1)(B), is not applicable in the absence of any allegation in the indictment concerning the quantity of drugs involved. Specifically, Pico argues that a defendant's right to due process is

violated unless the quantity of drugs involved is alleged in the indictment. Pico maintains that only the indictment can provide a defendant with the proper notice of the applicable penalties. We disagree.

■ The quantity of drugs involved is not an element of the offense with which Pico was charged. *See United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir.) (holding that under 21 U.S.C. §§ 841 & 846 "quantity is relevant only to enhancement of the sentence"), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). Consequently, a statement of the quantity of drugs at issue is not required in the indictment. Prior to pleading guilty a defendant is entitled to notice of the mandatory minimum sentences that may apply. Fed.R.Crim.P. 11(c)(1).

As the district court correctly noted, the notice provided to Pico was ample. The plea agreement stated that the mandatory minimum was ten years' imprisonment. In addition, Pico acknowledged in his Petition to Enter a Plea of Guilty that his attorney had advised him that the law provided at least a ten-year minimum sentence for the offense to which he was pleading guilty. Finally, prior to accepting Pico's plea of guilty, the court advised Pico that he was subject to a ten year minimum sentence and referred to this sentence as a "sobering" one. Any one of these warnings standing by itself would have provided sufficient notice of the enhanced penalties applicable. It is clear, therefore, that Pico was on notice that he faced a ten-year mandatory minimum sentence.

## II. *Amount of Cocaine Involved*

■ Pico next argues that the mandatory minimum should not have been applied, because there was insufficient proof that he could have reasonably foreseen that he was participating in a drug conspiracy involving 5 kilograms or more of cocaine. This contention is without merit. The district court has broad discretion to consider all relevant information when making a finding concerning quantity of drugs involved, and this quantity determination will not be disturbed unless it is clearly erroneous. *See United States v. Madkour*, 930 F.2d 234, 238–39 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991). Here there was ample support for the district court's conclusion

that "[t]he facts in the record ... establish a sufficient basis for connecting the defendant to the 51 kilograms of cocaine on the ship." Pico admitted that he was personally to receive $30,000 in compensation for picking up a package. Pico acknowledged that based upon this large payment, he knew that he was involved in helping to import a controlled substance. It is unclear from the record whether Pico was attempting to bring ashore all 51 kilograms by himself. While it is questionable whether Pico was capable of offloading all 51 kilograms at one time, Pico should have reasonably known by virtue of his payment of $30,000 that he was facilitating the importation of a large quantity of drugs. Therefore, as the district court correctly noted, it is immaterial that Pico lacked knowledge regarding the precise amount of cocaine involved. *See United States v. Collado–Gomez*, 834 F.2d 280, 280–81 (2d Cir. 1987) (per curiam), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). It was Pico and not the government who bore the risk that the amount of drugs involved was greater than Pico had anticipated.

The facts surrounding the present case are clearly distinguishable from those at issue in *United States v. Martinez*, 987 F.2d 920 (2d Cir.1993), upon which Pico now seeks to rely. In *Martinez*, we simply extended the reasonably foreseeable test of U.S.S.G. 1B1.3 to the statutorily mandated minimums of 21 U.S.C. § 841(b), and remanded for consideration of whether a latecomer to a conspiracy could have reasonably foreseen the amounts of narcotics sold prior to his entry into the conspiracy. *Id.* at 926. The only other two circuit courts considering the issue have fashioned the same rule. *See United States v. Young*, 997 F.2d 1204, 1209–1210 (7th Cir. June 24, 1993) (relying upon our "instructive" analysis in *Martinez* ); *United States v. Jones*, 965 F.2d 1507, 1517 (8th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992). As the Seventh Circuit noted in *Young*, *Martinez* "survey[ed] the legislative history of the current statutes, [and] noted that there is no indication that Congress intended to abandon the theory of conspiratorial liability that has descended from *Pinkerton* [*v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) ]." *Young*, 997 F.2d at 1210. Specifically, we

note that *Martinez* dealt only with the *Pinkerton* theory of conspiratorial liability as it applies to the standard for sentencing conspirators under the statutory minimum, not with the standard for determining the guilt of a co-conspirator. *See Martinez,* 987 F.2d at 926; *United States v. Lanni,* 970 F.2d 1092, 1093 (2d Cir.1992).

*Martinez* allows a limited participant, such as a latecomer, who is convicted for involvement in a large conspiracy to avoid the statutory minimums only if the district court determines that the individual did not know and could not reasonably foresee the amounts involved in the conspiracy. *See Martinez,* 987 F.2d at 926. Here, however, Pico's punishment is a consequence of his own acts, including his receipt of a $30,000 payment, which indicated his knowledge of the amounts of narcotics involved. The district court's determination that Pico knew about the scope of the conspiracy was supported by the record, and was not clearly erroneous.

## CONCLUSION

Based on the foregoing, the judgment of the district court is affirmed.