**UNITED STATES of America, Appellee,**

v.

**Ana Marin de VELASQUEZ, Defendant–Appellant.**

**No. 1245, Docket 93–1674.**

United States Court of Appeals, Second Circuit.

Argued April 18, 1994.

Decided June 22, 1994.

Marjorie M. Smith, New York City (The Legal Aid Society, Federal Defender Div., of counsel), for defendant-appellant.

Edgardo Ramos, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Susan Corkery, Asst. U.S. Atty., of counsel), for appellee.

Before ALTIMARI, McLAUGHLIN and JACOBS, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Ana Marin de Velasquez appeals a sentence imposed in the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *J.*), following her plea of guilty to importing heroin, in violation of 21 U.S.C. § 952(a). She argues that the district court should have based her sentence solely on the quantity of drugs she knew she possessed, and should not have considered a quantity of drugs discovered in the shoes she was wearing, of which she claims no knowledge. Alternatively, defendant argues that the drugs in her shoes should have been included in calculating her sentence only if she should have foreseen that there were drugs hidden in the soles of her shoes.

We have earlier held that a defendant convicted of importing drugs may be sentenced for the total quantity of drugs in his possession even if he thought he possessed a lesser quantity. *See United States v. Imariagbe*, 999 F.2d 706, 707 (2d Cir.1993) (per curiam). We now conclude that, as a general proposition, a defendant may be sentenced for the entire quantity of drugs in his possession even if the total quantity was not foreseeable.

The judgment of the district court is therefore affirmed.

## BACKGROUND

Ana Marin de Velasquez arrived at New York's John F. Kennedy International Airport from Colombia. During a customs inspection, she appeared to be extremely nervous and was sweating profusely. A search of the soles of the shoes she was wearing revealed that the shoes contained 167.8 grams of heroin. Customs agents also determined that she was transporting 636.3 grams of heroin internally, for a total of 804.1 grams.

After her arrest, the defendant admitted to agents that she was transporting drugs internally, but disclaimed all knowledge of the drugs found in the soles of her shoes. She claimed that Colombian drug traffickers gave her a pair of shoes that would identify her to her New York contact but she never knew the shoes contained heroin.

Eventually, defendant pled guilty to importing heroin, in violation of 21 U.S.C. § 952(a). During the plea allocution, defendant stated that she knew she was importing narcotics, although she did not know what kind. Her attorney stated that she had carried some of the narcotics internally, and that the remainder were found secreted in her shoes. No one mentioned defendant's alleged lack of knowledge of the heroin in her shoes.

Before sentencing, defendant's counsel wrote to the court to advise the judge that defendant disclaimed any knowledge about the heroin in her shoes. The presentence report also referred to defendant's lack of knowledge claim. At sentencing, the judge queried defense counsel about the significance of defendant's alleged ignorance of the heroin in her shoes. Counsel responded that, while he acknowledged that there was no requirement that the defendant know the total quantity of drugs she was transporting, her lack of knowledge could be taken into account in determining the sentence.

In calculating the total quantity of heroin defendant possessed for sentencing purposes, the court included the heroin in defendant's shoes. The court thus arrived at a base offense level of 30 for importing at least 700 grams but less than one kilogram of heroin. *See* U.S.S.G. § 2D1.1(a)(3). With a four-level reduction for minimal participation, U.S.S.G. § 3B1.2(a), and a three-level reduction for acceptance of responsibility, U.S.S.G.

§ 3E1.1, Ana Marin de Velasquez's adjusted offense level was 23, yielding a sentencing range of 46–57 months. The court sentenced her to 46 months' imprisonment, the lowest end of the sentencing range.

Shortly thereafter, defendant moved under Fed.R.Crim.P. 35 for a reduction in sentence based on her claim that she did not know the shoes contained heroin. Defense counsel explained that, at sentencing, he mistakenly believed that the plea agreement barred him from challenging the calculation of the base offense level. The district court denied the motion. The court expressly made no finding as to whether defendant was telling the truth about her alleged lack of knowledge that her shoes contained heroin, reasoning that our precedents required her to be sentenced for the total quantity of drugs she possessed, regardless of actual knowledge.

Defendant now appeals her sentence.

## DISCUSSION

If the district court had excluded the heroin concealed in defendant's shoes, she would have been sentenced under U.S.S.G. § 2D1.1(a)(3) for importing only 400–700 grams of heroin, resulting in a base offense level of 28 instead of 30. After the reductions for minimal participation and acceptance of responsibility, her adjusted offense level would have been 21, with a sentencing range of 37–46 months.

Defendant argues that the mens rea doctrine and considerations of due process required the district court to exclude the heroin in her shoes when calculating the total amount of drugs she possessed for sentencing purposes. In the alternative, she argues that the heroin in her shoes should have been included only if it was reasonably foreseeable that her shoes contained heroin.

■ Just last year, in *United States v. Imariagbe, supra,* we held that neither due process nor the doctrine of mens rea requires that a defendant actually know the total quantity of drugs in his possession to be sentenced for the full amount under the Sentencing Guidelines. *See* 999 F.2d at 707. We reaffirm that holding here. Defendant's first argument is therefore without merit.

The defendant's alternative argument, however, is not so easily dispatched, for our cases have not been as clear. In *Imariagbe,* for example, we stated that the sentence should be based on "actual quantities" of drugs found in the defendant's possession. 999 F.2d at 707. In *United States v. Ekwunoh,* 12 F.3d 368, 370 (2d Cir.1993), on the other hand, we "assume[d], without deciding" that a defendant in a possession case could be sentenced only for the quantity of drugs he should reasonably have foreseen that he possessed. We now reject that assumption and hold that in a possession case the sentence should be based on the total amount of drugs in the defendant's possession, without regard to foreseeability.

## I. *The sentencing statutes*

■ 21 U.S.C. § 952(a), together with § 960(a), makes it a crime to "knowingly" import certain illicit drugs into the United States. The other principal drug possession statute, 21 U.S.C. § 841(a), makes it a crime to "knowingly" manufacture, distribute, or otherwise possess illicit drugs. Quantity is not part of the *corpus delicti,* i.e., forms no part of the substantive offense under any of these statutes. *See, e.g., United States v. Campuzano,* 905 F.2d 677, 679 (2d Cir.), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). Conviction rests solely on the knowing possession of some quantity, however large or small, of illicit drugs. *See id.*

■ Quantity comes into play only at the sentencing stage, where it determines the minimum or maximum penalty the defendant may receive. *See* 21 U.S.C. § 960(b) and § 841(b). It is settled that the minimum and maximum sentences are to be strictly imposed, regardless of the defendant's state of mind concerning the total quantity of drugs in his possession. *See, e.g., Campuzano,* 905 F.2d at 677; *United States v. Collado–Gomez,* 834 F.2d 280 (2d Cir.1987) (per curiam), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988); *United States v. Pineda,* 847 F.2d 64 (2d Cir.1988) (per curiam). Mens rea and due process concerns are fully satisfied at the conviction stage, where the

defendant must be found guilty of, or plead to, "knowingly" possessing some amount of drugs. *See United States v. Obi*, 947 F.2d 1031, 1032 (2d Cir.1991) (per curiam) ("the *mens rea* requirement concerning the possession of a controlled substance satisfies due process concerns ... Congress, for purposes of deterrence, intended that narcotics violators run the risk of sentencing enhancements concerning other circumstances surrounding the crime.") Thus, in *Pineda*, we held that imposition of the ten-year minimum sentence mandated by 21 U.S.C. § 841(b)(1)(A) for distributing more than five kilograms of cocaine "did not in any way criminalize otherwise innocent activity or create a trap for the unwary," even if the defendant did not know that he possessed over five kilograms of cocaine, "because the statute requires proof that a defendant knowingly and intentionally possessed a controlled substance." 847 F.2d at 65.

Particularly in drug offense cases, it is by no means unusual to peg the sentence to factors that were not known—or even foreseeable—to the defendant at the time the crime was committed. For example, under 21 U.S.C. § 860(a) a defendant who distributes drugs within 1000 feet of a school is subject to twice the maximum penalties for drug distribution. This is true, regardless of whether he knew or could foresee that he was within the proscribed distance. *See United States v. Falu*, 776 F.2d 46, 50 (2d Cir.1985). Similarly, under 21 U.S.C. § 859, a defendant who distributes drugs to a minor is subject to twice the maximum penalty, regardless of whether he knew or could foresee that the buyer was a minor. *See United States v. Pruitt*, 763 F.2d 1256, 1261–62 (11th Cir.1985), *cert. denied*, 474 U.S. 1084, 106 S.Ct. ·856, 88 L.Ed.2d 896 (1986). Thus, there is nothing startling, or even notable, in the conclusion that a defendant who knows she is carrying some quantity of illicit drugs should be sentenced for the full amount on her person. This remains true even where, as here, defendant claims she did not know she was carrying an additional quantity of drugs—additional to the packet she agreed to carry.

A fertile imagination can conjure bizarre situations where the defendant's possession is tenuous and fleeting. The statute has yet to be drafted that could not be unconstitutionally applied in some extraordinary case, and these cases will have to be dealt with if they arise. Here, however, the defendant was wearing the very shoes that contained the heroin. Clearly, her possession was not ephemeral, and the statute properly applied to her.

## II. *The Sentencing Guidelines*

The Sentencing Guidelines are simply an extension of the statutory sentencing scheme. Under the Guidelines, as under the statutes, the total quantity of drugs possessed by the defendant defines the penalty, not the offense. The offense remains the "knowing" possession of drugs, in violation of § 952(a) or § 841(a). There is no requirement under the Guidelines that the defendant know or foresee the total quantity of drugs in his possession to be sentenced for the full amount—just as there is no such requirement under the statutes.

Any doubt about this is dispelled by the Guidelines themselves, which explicitly state that there is no requirement of reasonable foreseeability (or actual knowledge) for sentencing in possession cases. *See* U.S.S.G. § 1B1.3, comment. (n. 2) (reasonable foreseeability "does not apply to conduct that the defendant personally undertakes.") Instead, the Guidelines provide that defendants are accountable for "all quantities" of drugs with which they are "directly involved." *Id.*

The Guidelines contain two enlightening illustrations. In the first, a hypothetical defendant is arrested while assisting in offloading a ship containing a large amount of marijuana. In the second, a defendant transports a suitcase knowing that it contains some quantity of drugs. In both cases, the Guidelines conclude, the defendant's sentence should be based on the full amount of drugs involved, "without regard to the issue of reasonable foreseeability" and "regardless of his knowledge or lack of knowledge." *See* U.S.S.G. § 1B1.3, comment. (n. 2), illustration (a)(1). Thus, the Guidelines make clear that a defendant who knowingly possesses

some quantity of illicit drugs cannot disclaim "direct involvement" with the full amount on the ground that the full amount was not foreseeable.

We recognize, of course, that conspiracy cases have been treated differently and that reasonable foreseeability is the rule for sentencing in drug conspiracy cases. *See* U.S.S.G. § 1B1.3 comment. (n. 2); *United States v. Martinez*, 987 F.2d 920, 926 (2d Cir.1993). As we explained in *Martinez*, the Sentencing Guidelines explicitly impose a reasonable foreseeability test in conspiracy cases. *See* 987 F.2d at 924 (Sentencing Guidelines provide that "an individual charged with conspiracy will only be sentenced for conduct that was reasonably foreseeable by the individual."). Without a reasonable foreseeability test, a defendant in a conspiracy case would be liable not just for his own actions, but also for "any crimes committed by any other members of the conspiracy." *Id.*

In a possession case, however, we see no reason why a defendant who knowingly traffics in drugs should not bear the risk that his conduct may be more harmful to society than he intends or foresees. We therefore decline to fashion a rule that would permit a defendant to avoid the consequences of that risk because of a fortuitous lack of knowledge or foreseeability—fortuities which apparently occur with some frequency. *See, e.g., Ekwunoh*, 12 F.3d at 369 (defendant thought she possessed 400 grams of heroin instead of one kilogram); *Imariagbe*, 999 F.2d at 707 (defendant thought his briefcase contained 400 grams of heroin instead of 850 grams); *Obi*, 947 F.2d at 1032 (defendant thought he was importing cocaine rather than heroin); *Collado–Gomez*, 834 F.2d at 281 (defendant thought he was dealing heroin instead of crack cocaine); *United States v. Normandeau*, 800 F.2d 953, 955–56 (9th Cir.1986) (defendants thought they were importing less than 1,000 pounds of marijuana). In the drug trade, there is always the chance, as is alleged in most of these cases, that the supplier will not recognize "the punctilio of an honor the most sensitive." *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928) (Cardozo, J.). Harsh penalties may result for the courier, but constructing a rule of law to mitigate the perceived harshness of Congress' sentencing regime would indeed be "the sentencing tail ... wagging the guilt-innocence dog." *United States v. Cordoba–Hincapie*, 825 F.Supp. 485, 523 (E.D.N.Y. 1993).

It is certainly possible, of course, to imagine a situation where, as we pointed out in *Imariagbe*, "the gap between belief and actuality was so great as to make the Guideline grossly unfair in application." 999 F.2d at 708. In such cases, a downward departure may be appropriate. The Guidelines, however, were designed to apply to the ordinary mine-run case. This is such a case.

Applying the foregoing principles, we believe Ana Marin de Velasquez was properly sentenced for the total amount of heroin in her possession, without regard to whether she knew or could foresee the heroin concealed in her shoes.

## CONCLUSION

The judgment of the district court is affirmed.