**UNITED STATES of America,**
Appellee,

v.

Cesar ESPINOZA–MORA, aka Lupillo, Victor Rivera, aka Victor R. Quinones, Miguel Mejia aka Mike, Gabriel Rivera, Defendants–Appellants.

Nos. 05–3162–cr,05–4176–cr, 05–5593–cr, 05–6418–cr.

United States Court of Appeals, Second Circuit.

Nov. 15, 2006.

Daniel L. Stein, Assistant United States Attorney, Southern District of New York (Daniel L. Stein, Glen G. McGorty, Amy Finzi, and Harry Sandick, Assistant United States Attorneys, of counsel, Michael J. Garcia, United States Attorney, on the brief), New York, NY, for Appellee.

Jane Simkin Smith, Millbrook, NY, for Appellant Espinoza–Mora.

Abraham Abramovsky, New York, NY, for Appellant Meija.

Eric M. Sears, New York, NY, for Appellant Gabriel Rivera.

Vivian Shevitz, South Salem, NY, for Appellant Victor Rivera.

PRESENT: Hon. RALPH K. WINTER, Hon. JOSEPH M. McLAUGHLIN and Hon. CHESTER J. STRAUB, Circuit Judges.

### SUMMARY ORDER

Defendants–Appellants Cesar Espinoza–Mora and Miguel Mejia appeal from judgments of conviction entered May 17, 2005 and October 7, 2005, respectively, in the Southern District of New York, following a guilty plea before the Hon. Denise L. Cote, *Judge.* Victor Rivera and Gabriel Rivera appeal from judgments of conviction entered on August 24, 2005 and November 28, 2005, respectively, in the Southern District of New York, following a two-week jury trial before the Hon. Denny Chin, *Judge.* Each defendant is charged with membership in the same conspiracy to distribute cocaine—a trafficking operation that brought some hundreds of kilograms of cocaine into the United States from Mexico, where the cocaine was supplied by a trafficker named Cesar Lopez Sanchez, or "Paco." On May 13 and September 30, 2005, Judge Cote sentenced Espinoza–Mora and Mejia, respectively, to 87 months' imprisonment and five years' supervised release, and to 292 months' imprisonment and five years' supervised release. On August 16 and November 7, 2005, Judge Chin sentenced Victor Rivera and Gabriel Rivera, respectively, to 97 months' imprisonment and four years' supervised release, and to 130 months' imprisonment and five years' supervised release.

We assume the parties' familiarity with the facts, procedural history, and issues on appeal. Victor and Gabriel Rivera challenge their convictions, and Victor Rivera and Mejia challenge their sentences. For the reasons that follow, we affirm as to those defendants. Espinoza–Mora's coun-

sel has filed a motion to withdraw, pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), on the ground that there are no non-frivolous bases for Espinoza–Mora's appeal. The Government moves for summary affirmance as to Espinoza–Mora's conviction and sentence. For the reasons that follow, we grant the motion to withdraw, and affirm.

## 1. Sufficiency of the Evidence

Victor and Gabriel Rivera both challenge the sufficiency of the evidence supporting their convictions. Our standard of review on this issue is highly deferential:

> The evidence presented at trial should be viewed in the light most favorable to the Government, crediting every inference that the jury might have drawn in favor of the Government. We consider the evidence presented at trial in its totality, not in isolation, but may not substitute our own determinations of credibility or relative weight of the evidence for that of the jury. We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence. Accordingly, we will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*United States v. Bruno*, 383 F.3d 65, 82 (2d Cir.2004) (quotations omitted).

■ Both Victor and Gabriel Rivera argue that the evidence was insufficient to support their convictions for participation in the conspiracy. Relying on *United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998), both defendants argue that the evidence shows at most a buyer-seller relationship between the Rivera defendants and the broader conspiracy, and that such a relationship is insufficient to establish their participation in the conspiracy.

"A defendant may be found guilty of conspiracy on the basis of evidence from which it can reasonably be inferred that he knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Flaharty*, 295 F.3d 182, 200 (2d Cir.2002) (quotation marks and alterations omitted). "Though ... a mere buyer-seller relationship is not necessarily a conspiracy, a defendant may be deemed to have agreed to join a conspiracy if there is something more, some indication that the defendant knew of and intended to further the illegal venture, that he somehow encouraged the illegal use of the goods or had a stake in such use." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir.1989) (quotation marks and citation omitted). "The defendant need not know the identities of all of the other conspirators, nor all of the details of the conspiracy." *Gore*, 154 F.3d at 40. However, "the government must demonstrate that the accused had *some* knowledge of [the conspiracy's] unlawful aims." *United States v. Lanza*, 790 F.2d 1015, 1023 (2d Cir.1986) (original emphasis).

In *Gore*, the sole—insufficient—evidence related to a single drug purchase by the defendant from a Government informant. Here, by contrast, the testimony of co-conspirators at trial showed that Gabriel Rivera received cocaine from the conspiracy in a number of transactions, and that he, Victor Rivera and other conspirators distributed that cocaine in New York. Drug proceeds were packaged for distribution and delivery in Gabriel Rivera's apartment. The evidence at trial included recordings of telephone calls between Gabriel Rivera and a coconspirator regarding the conspiracy's business. In

addition, the conspiracy's business was discussed at Gabriel Rivera's apartment when both Riveras were present. Further testimony from a co-conspirator and from a Detective of the New York Police Department showed that on one occasion Victor Rivera, driving a car belonging to Paco, personally took $70,000 in drug proceeds from Mejia and delivered it to a co-conspirator. Although the Riveras may have been relatively minor players in the conspiracy, the evidence—when viewed in the light most favorable to the Government—suffices to establish that they were both knowing participants.

■ Gabriel Rivera, as to whom the jury found that the amount of cocaine with which he was personally involved or which was reasonably foreseeable to him was five kilograms or more, argues that the evidence was insufficient to support that finding. He observes that the Government's witnesses testified inconsistently as to the amount of cocaine which he purchased, and that the evidence would support a finding that he purchased as little as 3.5 kilograms or as much as 6.5 kilograms. "[I]t is well-settled that when reviewing the sufficiency of the evidence we defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." *United States v. Glenn,* 312 F.3d 58, 64 (2d Cir.2002). The evidence supports a finding that Gabriel Rivera personally purchased and distributed more than five kilograms of cocaine. We therefore do not need to consider the extent to which the larger amounts of cocaine in which the overall conspiracy dealt were "reasonably foreseeable" to him. *See, e.g., United States v. Jackson,* 335 F.3d 170, 181 (2d Cir.2003) (noting that defendant is liable for the amount of cocaine her co-conspirator conspired to import provided that defendant knew of the quantity and sub-

stance involved, or it was at least reasonably foreseeable to her).

### 2. The District Court's *Allen* Charge

Both Riveras argue that they were denied a fair trial because the supplemental charge given by the District Court during the jury's deliberations was unduly coercive. "It has long been established that when a trial court receives notice that the jury is deadlocked it may give a charge, commonly referred to as an '*Allen*' charge, that urges the jurors to continue deliberations in order to reach a verdict." *Smalls v. Batista,* 191 F.3d 272, 278 (2d Cir.1999) (citing *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)). "Whether an *Allen* charge was appropriate in a given case hinges on whether it tends to coerce undecided jurors into reaching a verdict. Coercion may be found when jurors are encouraged to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt." *United States v. Melendez,* 60 F.3d 41, 51 (2d Cir.1995). "[T]he potential coercive effect of a charge to a deadlocked jury must be evaluated 'in its context and under all the circumstances.'" *Spears v. Greiner,* 459 F.3d 200, 205 (2d Cir.2006) (quoting *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)). "[A] trial court's decision to give an *Allen* charge is reviewed under an abuse-of-discretion standard." *United States v. Crispo,* 306 F.3d 71, 77 (2d Cir. 2002).

■ Nothing in Judge Chin's charge to the jury or the surrounding circumstances suggests improper coercion. Indeed, Judge Chin specifically instructed the jurors that they should not "surrender [their] honest beliefs about the weight of the evidence." Moreover, "[t]he fact that defense counsel failed to object to the trial court's [ ] supplemental charge is also a

persuasive factor, much as it was in *Lowenfield*, in finding that the charge was not improperly coercive." *Spears*, 459 F.3d at 206. Finally, we note that the jury did not immediately return a verdict following the District Court's *Allen* charge. The first *Allen* charge was given at 10:40 a.m.; the jury deliberated until 1:54 p.m. before sending another note indicating that it had reached a verdict as to Gabriel Rivera, but was hopelessly deadlocked with respect to Victor Rivera and a third defendant, Jorge Rodriguez, who was subsequently acquitted. The District Court again urged the jury to attempt to "keep trying," and deliberations resumed at 2:35 p.m. The jury returned its final verdict at 4:15 p.m. The timing of these events "suggests that the charge was not so coercive as to end all reasoned discussion." *Crispo*, 306 F.3d at 77 (finding it significant that "the jury did not return a verdict immediately after the *Allen* charge was reread at 10:25 a.m. but returned its verdict some time after lunch.").

■ Victor Rivera additionally objects to the District Court's statement, in the *Allen* charge, that there was no "reason to believe that more or clearer evidence could be produced a second time around." Rivera argues that this language suggested to the jury that the evidence at trial was already "clear and sufficient." Because Rivera failed to object to this language at trial, we review for plain error. We see nothing unduly suggestive in the District Court's language.

### 3. Gabriel Rivera's Mistrial Motion

■ Gabriel Rivera argues that the District Court erred in denying his motion for a mistrial, based on the prosecution's introduction of testimony from one of its witnesses, co-conspirator Cesar Escobar, to the effect that prior to the period of the charged conspiracy, Rivera "would sell the dimes or 20s of coke." That testimony was introduced—apparently inadvertently—without Rivera having been given prior notification pursuant to Federal Rule of Evidence 404(b).

We review the District Court's denial of Rivera's motion to declare a mistrial for abuse of discretion. *See United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir.1995). We see no abuse of discretion here. The District Court gave an appropriate limiting instruction, striking that testimony from the record and instructing the jury to disregard it. We assume "that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." *United States v. Mussaleen*, 35 F.3d 692, 695 (2d Cir.1994) (quotation marks and citations omitted).

■ Rivera argues that a subsequent instruction given by the District Court is likely to have confused the jury on this issue. As part of its final charge to the jury, the District Court stated that "the government has offered evidence to show that on occasions prior to the time of the conspiracy alleged, one or more of the defendants engaged in conduct similar to that charged in the indictment. I remind you that the defendants are not on trial for committing those earlier acts.... [However] you may consider the evidence of the other acts in deciding whether the defendants committed the acts charged in the indictment knowingly and intentionally." That instruction—to which Rivera did not object at trial—apparently related to Rivera's co-defendant Jorge Rodriguez, as to whom additional prior bad acts testimony was admitted pursuant to Rule 404(b). Even if we were to conclude that it was

overwhelmingly probable that the District Court's final charge confused the jury as to whether it was permitted to consider the stricken testimony as to Rivera, in light of the extensive evidence properly offered during trial of Rivera's involvement in cocaine dealing, we do not think it at all likely that the effect of the witness's blurted testimony would be devastating.

## 4. Sentencing Challenges

Both Victor Rivera and Miguel Mejia challenge their sentences on appeal.

■ Victor Rivera challenges the drug quantity finding made by the District Court at sentencing. At trial, the jury found that the amount of cocaine with which Victor Rivera was personally involved or which was reasonably foreseeable to him was more than 500 grams but less than five kilograms. At sentencing, Judge Chin made a finding that Rivera was involved with more than 3.5 but less than five kilograms of cocaine, apparently by taking into account not only the amounts of cocaine which—according to the trial testimony—Rivera personally dealt with, but also the $70,000 in drug proceeds which Rivera transported. On appeal, Rivera argues that there is no evidence that he knew that what he was transporting was drug proceeds.

"The district court must find drug quantity by a preponderance of the evidence, and we will affirm unless that determination was clearly erroneous." *United States v. Powell*, 404 F.3d 678, 681 (2d Cir.2005) (citations omitted). Given the evidence of Rivera's involvement with and knowledge of the conspiracy, we see no clear error in the District Court's determination that Rivera was aware that he was transporting a significant quantity of either drugs or drug proceeds. Even if Rivera was unaware of the precise amount of money he was transporting, that is "im-

material. . . . It was [Rivera] and not the government who bore the risk that the amount of drugs involved was greater than [Rivera] had anticipated." *United States v. Pico*, 2 F.3d 472, 475 (2d Cir.1993).

Mejia also challenges the District Court's drug quantity finding. The District Court determined that Mejia was responsible for conspiring to distribute more than 150 kilograms of cocaine. Being careful to avoid double-counting, the District Court reached this figure by considering three specific items: a May 2003 meeting which, according to one witness, Rafael Fuentes, involved a total quantity of 150 kilograms, and which, according to another witness, Escobar, involved only 120 kilograms. Acknowledging that there was some uncertainty as to the amount of cocaine discussed at the May 2003 meeting, the District Court assumed conservatively that the amount at issue was 120 kilograms. The District Court also considered Escobar's testimony that he personally entered into transactions with Mejia for 25 kilograms, which the District Court found was intended "for both Escobar and [Mejia] to be distributed in New York through their jointly run drug business," and considered testimony as to a subsequent delivery of 31 kilograms, which the District Court found was intended for Mejia.

■ Mejia makes two arguments with respect to this quantity finding. First, he argues that he should not be held responsible for amounts which were "not solely attributable to [him] but also included drugs shipped to Carlos Escobar." The District Court reasonably determined that Escobar and Mejia operated jointly; regardless of what proportion of the quantities of cocaine discussed was intended to be distributed not by Mejia, but by his co-conspirators, those amounts were reasonably foreseeable to Mejia and are attributable to him. Mejia also argues that

Fuentes' testimony that the May 2003 meeting involved 150 kilograms is inconsistent with Fuentes' own more specific testimony regarding the amount of money involved, and the going rate at the time for cocaine: Mejia calculates that 111 kilograms is the more precise figure for the May 2003 meeting. However, whether Mejia is correct in this calculation or not, there was more than sufficient evidence to support a finding of more than 150 kilograms.

■ Mejia also argues that the District Court erred in finding him subject to a four-level Guidelines enhancement pursuant to U.S.S.G. § 3B1.1(a) as a an "organizer or leader" of criminal activity involving five or more participants. The evidence clearly supports the District Court's finding that Mejia acted as an organizer or leader of the conspiracy. Mejia's argument that he personally supervised at most three people is—even if we accept it as true—beside the point: to be subject to the enhancement, it is necessary only to show that Mejia organized or lead at least one other participant in a conspiracy that included five or more participants, not that he personally organized or lead five or more people. *See United States v. Zichettello,* 208 F.3d 72, 107 (2d Cir.2000); U.S.S.G. § 3B1.1 Application Note 2.

■ Mejia also argues that Judge Cote failed to give proper weight to all of the § 3553(a) sentencing factors. *See United States v. Crosby,* 397 F.3d 103, 112–13 (2d Cir.2005). Mejia's argument rests on two grounds. First, Mejia argues that Judge Cote indicated that the § 3553(a) factors are to be considered if and only if the Guidelines do not suffice to eliminate unwarranted disparities in sentencing. However, contrary to Mejia's argument, Judge Cote clearly stated that her sentence was based on consideration of all the § 3553(a)

factors. Second, Mejia objects to Judge Cote's failure explicitly to discuss the § 3533(a) factors other than those relating to sentencing disparities. Although we have required district courts to "consider" the § 3553(a) factors, *see Crosby,* 397 F.3d at 113, "[w]e have [ ] steadfastly refused to require judges to explain or enumerate how such consideration was conducted." *United States v. Pereira,* 465 F.3d 515, 523 (2d Cir.2006). Rather, we "presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors.... [A]nd we will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors simply because she did not discuss each one individually or did not expressly parse or address every argument relating to those factors that the defendant advanced." *United States v. Fernandez,* 443 F.3d 19, 30 (2d Cir.2006). We see no reason here to depart from that presumption.

■ Lastly, Mejia challenges the substantive reasonableness of his 292–month sentence. Mejia's sentence is at the lowest end of the applicable guidelines range. Although we do not presume that a sentence within the guidelines range is therefore reasonable, "[w]e recognize that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez,* 443 F.3d 19, 27 (2d Cir.2006). Under the circumstances of this case, we conclude that the sentence is reasonable.

### 5. Espinoza–Mora's *Anders* Brief

Finally, we have reviewed the *Anders* brief submitted by Espinoza–Mora's counsel, and conclude that it complies with *United States v. Ibrahim,* 62 F.3d 72 (2d Cir.1995). We also have reviewed the un-

derlying record and conclude that there are no non-frivolous grounds for an appeal. Accordingly, we grant counsel's motion to withdraw, and grant the government's motion for a summary affirmance of Espinoza–Mora's judgment of conviction.

## Conclusion

For the foregoing reasons, we AFFIRM the judgments of the District Courts as to all defendants, and GRANT Espinoza–Mora's counsel's motion to withdraw.