**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Israel SALVA, Defendant–Appellant.**

**No. 89–1556.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1989.

Decided Jan. 23, 1990.

As Amended Jan. 29, 1990.

Patricia Gorence (argued), U.S. Atty., Maxine A. White, Matthew L. Jacobs, Asst. U.S. Attys., Office of U.S. Atty., Milwaukee, Wis., for U.S.

Jess Martinez, Jr. (argued), Donnor Paul Martinez, Waukesha, Wis., for Israel Salva.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

In March 1988, Israel Salva was arrested and charged with one count of conspiracy to possess cocaine with intent to distribute and three counts of possession with intent to distribute in violation of 21 U.S.C. sections 841(a)(1) and 846 and 18 U.S.C. section 2. In a separate information, the government charged him with one count of engaging in the business of selling firearms without a license in violation of 18 U.S.C. sections 2 and 922(a)(1). By plea bargain, Salva entered a guilty plea to count three of the original indictment (possession of three ounces, or approximately 84 grams, of cocaine) and to the single firearms count in the information. All remaining charges were dismissed.

Salva raises two issues in this appeal. First, he challenges the validity of his guilty plea, claiming that he was unable to make an intelligent waiver of his rights because the district court failed to apprise him, as it was required to do by Federal Rule of Criminal Procedure 11(c)(1), of the minimum sentence that he would face under the Federal Sentencing Guidelines. Second, Salva objects to the inclusion of cocaine associated with dismissed and uncharged counts in the calculation of his base sentencing level.

We conclude that the district judge properly advised Salva as to the statutory maximum sentence applicable to him and that the court was not required to inform Salva of a mandatory minimum sentence, since none exists for the crimes to which he pleaded guilty. In light of our recent decision in *United States v. White,* 888 F.2d 490 (7th Cir.1989), we also uphold the sentence imposed by the district court on Salva.

## I.

On three occasions between January 28, 1988, and February 24, 1988, Salva sold or arranged the sale of cocaine to a confidential government informant. He sent a co-conspirator to deliver one ounce of cocaine on January 28, and he later received the money for that transaction. At his store, Salva sold three ounces of cocaine to the informant on February 5. Salva and the informant arranged a transaction for an additional ten ounces, which was to take place again at Salva's store on February 24. When the appointed day arrived, however, the informant and a special government agent purchased only one ounce, explaining that they would need two more days to come up with the money for the remaining nine ounces. The government soon arrested Salva's co-conspirator, Greg Baranyk. According to Baranyk, Salva was keeping the unpurchased nine ounces in his store, awaiting the return of the informant and agent. Before the transaction could be completed, the government also arrested Salva. Salva revealed the location of the remaining cocaine to his attorney, who then relayed this information to the government. But before the authorities arrived at Salva's store, Salva's wife managed to destroy some of the cocaine by dousing it with water. On April 26, 1988, Salva was also charged in a one-count information with marketing firearms without a license.

That same day, Salva entered plea agreements with the government on both the indictment and the information.[1] In return for his agreement to plead guilty on count three of the indictment (the three-ounce sale), the government pledged to dismiss the remaining three charges. R. 11. Salva also agreed to plead guilty to the single firearms charge in the separate information. R. 2. Except for the description of the actual charges, the two plea agree-

ments are identical in content. Paragraph 5 of each plea agreement specifies the maximum penalties for the crimes to which Salva pleaded guilty—20 years imprisonment and a one million dollar fine for the drug charge; 5 years imprisonment and a maximum fine of $250,000 for the firearms count. The agreements also state what the government would have had to prove at trial to obtain a conviction on the charges and explain each of the constitutional rights that Salva would waive by pleading guilty. The government agreed to advise the court of Salva's cooperation and assistance in their investigation of others suspected of dealing in large amounts of cocaine. R. 2 and 11, at ¶¶ 8, 20.

Separate change of plea hearings were held on the indictment and the information. Judge Stadtmueller accepted Salva's plea of guilty to count three of the indictment on April 28, 1988, after determining that Salva was competent to enter the plea, had done so voluntarily and with the benefit of counsel's advice and understood the rights he was waiving by pleading guilty without a trial. R. 15. With the assistance of Salva's defense counsel, the court also concluded that Salva fully understood the contents of the plea agreement, including the government's right "to recommend any sentence they wish up to twenty years in the cocaine case and up to five years on the gun case. . . ." *Id.* at 6 (question posed by defense counsel to Salva).[2] When the court asked Salva what he understood the maximum sentence to be on the cocaine charge, defense counsel again intervened, with the court's permission, to interrogate Salva. Again, Salva responded that he understood that the maximum sentence on that charge was twenty years. *Id.* at 8–9. On further questioning by his counsel, Salva also confirmed his understanding that the court was not a party to the plea agreement and would make up its own mind as to the appropriate sentence after reviewing the

---

1. The two cases were consolidated for sentencing.

2. Both plea agreements clearly specify the government's right to inform the court of all

facts it might consider relevant to Salva's sentence and its right to make a specific sentencing recommendation to the court. R. 2 and 11, at ¶¶ 8, 12.

presentence report. *Id.* at 9.[3]

The court subsequently informed Salva of the applicability of the Sentencing Guidelines to his case, the maximum fine allowable for the cocaine charge and the mandatory three-year period of supervised release that would follow Salva's jail term. *Id.* at 10–11. Evidently, Salva's was the first case in the district to which the Sentencing Guidelines were applicable. *See id.* at 9. Consequently, Judge Stadtmueller took pains to explain the general workings of the Guidelines to Salva and specifically informed Salva that he would not be able to determine the sentence until the presentence report had been compiled and presented to the court. *Id.* at 11. Counsel for the government informed the court that she had sent Salva's counsel her worksheets calculating the likely Guidelines result in a variety of scenarios. *Id.* at 23–24. (The actual worksheets appear in Appellee's Supp.App. at 216–26.) Defense counsel indicated that he and another defense lawyer had thoroughly gone over the Guidelines and the Assistant U.S. Attorney's letter with Salva on two separate occasions. R. 15 at 24–25. After hearing the government's proposed proffer of proof on the indicted charges, the district court found a satisfactory factual basis for the plea and accepted it.

The proceedings at the June 1, 1988, change of plea hearing on the firearms charge followed the same course as those at the April 28 hearing. Again, Judge Stadtmueller established Salva's competence to plead, the voluntariness of and factual basis for the plea and Salva's comprehension of the rights he waived by agreeing to plead guilty to the charge without grand jury indictment or jury trial. R. 12. As in the earlier hearing, defense counsel assisted the court in eliciting from Salva his acknowledgement that the maximum sentence he faced on the charge was five years imprisonment and a fine of up to $250,000. *Id.* at 8. Salva affirmed his understanding that he could not withdraw the plea if he were dissatisfied with the sentence, *id.* at 9, and when the court asked whether defense counsel knew of any reason why the court should not accept the plea, Salva's lawyer answered, "No, I do not, your Honor." *Id.* at 20.

Salva now challenges both his convictions and his sentence on the drug charge.

## II.

Salva complains that the district judge never informed him of the statutory minimum he faced on his convictions. Because of this alleged failure, Salva contends that his plea is invalid and his conviction and sentence must therefore be vacated. In Salva's view, the bottom end of an applicable sentencing range under the Guidelines is, for all practical purposes, a "mandatory minimum sentence" of which a defendant must be advised by the court, pursuant to Rule 11(c)(1), when entering a guilty plea.[4] We disagree.

While Congress certainly sought to achieve, as a principal goal of the Sentencing Guidelines, greater uniformity in sentencing, *see* Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1, 4–5 (1988) (author served on Sentencing Guidelines Commission), the Guidelines do not by themselves alter the actual criminal statutes under which federal crimes are charged and prosecuted. Nor do the Guidelines entirely deprive district judges of discretion in imposing sentence. Congress explicitly contemplated the exercise of judicial discretion when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree,

---

**3.** This point, too, is set forth clearly in the plea agreements. R. 2 and 11, at ¶ 13.

**4.** Rule 11(c)(1) provides in pertinent part:

    **(c) Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

    (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term or term of supervised release....

not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b). The Guidelines themselves provide for departures from the applicable sentencing range for a number of reasons. Guidelines §§ 5K1.1–5K2.14. Salva, indeed, benefited from Judge Stadtmueller's discretionary downward departure from the prescribed sentencing range. Consequently, we conclude that the Sentencing Guidelines do not impose a "mandatory minimum penalty" within the meaning of Rule 11(c)(1), and the district judge did not err in failing to inform Salva of the ultimate sentencing range that he would likely face on his convictions. The record of proceedings at both the change of plea hearings, detailed above, demonstrates Judge Stadtmueller's careful and considered compliance with the strictures of Rule 11.

Salva urges us to conclude that even if the Guidelines do not create a mandatory minimum penalty, "fundamental fairness" requires district courts to advise defendants before they enter a guilty plea of the likely sentencing range to which the defendant will be exposed. Due process, however, does not oblige the government or the court to predict the defendant's sentence. *United States v. Fernandez*, 877 F.2d 1138, 1142–43 (2d Cir.1989). Defendants were not entitled to such predictions before the Guidelines came into effect, *see Ruiz v. United States*, 494 F.2d 1, 3 (5th Cir.) (per curiam), *cert. denied*, 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974); *Paradiso v. United States*, 482 F.2d 409, 415 (3d Cir. 1973); *United States v. Theodorou*, 576 F.Supp. 1007, 1009 (N.D.Ill.1983), and the Guidelines have not altered that rule. Further, no representations were made to Salva by the government or the court that any

particular sentence would be imposed. Salva was informed both by the plea agreements and by the district judge at the time he entered his plea that he could not seek to withdraw the plea simply because he did not like the sentence he received. This advice met the requirements of the Guidelines policy statement at section 6B1.1(b) and fulfilled the district court's obligations under Rule 11(c).

Certainly, Salva cannot claim that he was deceived by the government. The government abided by each of its agreements and properly exercised its rights under the agreement to inform the court of the nature of Salva's conduct relating to the charges and the extent of his cooperation (which was, according to the prosecutor, quite substantial). Indeed, the government filed a motion with the district court on September 12, 1988, requesting a departure from the Sentencing Guidelines offense category calculated by the Probation Office in its presentence report. R. 19 and 20. The presentence report apparently determined an offense level for Salva that would have resulted in 41 to 51 months imprisonment. *See id.* In light of Salva's extensive cooperation in ongoing narcotics investigations, during which Salva evidently placed himself in potentially life-threatening situations, the government recommended that the court depart downward and sentence Salva at the lower range of 24 to 36 months. Ultimately, the court did adopt the government's suggestion, sentencing Salva to 33 months on the firearms charge and a concurrent term of 32 months on the drug count.[5]

Even though the district court did not predict the sentencing range that would be applied to Salva, Salva's final sentence surely came as no surprise to him.[6] Both

---

**5.** The court also imposed on Salva a fine of $7,500 and a special assessment of $50 on each conviction. Salva, however, challenges only his prison term.

**6.** Salva makes much of the fact that the district court did not correct his trial counsel's statement at the plea hearing on the drug charge that the judge "could give you as low as probation...." R. 15, at 9. In determining whether the district court committed reversible error in failing to inform Salva that the Guidelines

would not have prescribed parole for his case, we consider the total circumstances surrounding the plea. *See United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983) (per curiam) (citing *United States v. Wetterlin*, 583 F.2d 346, 354 (7th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979)). Viewing the circumstances as a whole, we cannot conclude that Salva could have reasonably expected, from this lone comment made by his own attorney, that

the Assistant U.S. Attorney and Salva's own counsel had made extensive explanations to Salva of the manner in which the Guidelines would likely be applied in his case. Further, the government's letter to the court recommending downward departure to the lower range of 24 to 36 months imprisonment was received by Salva on or about September 12, 1988. R. 19 and 20. Sentencing, however, took place on February 1, 1989. Therefore, Salva was informed *more than four months before sentencing took place* what the likely range would be. He did not object to the calculations set forth in the presentence report, nor to the government's recommended departure. Given the extensive and specific information concerning the Guidelines which Salva possessed long before the sentencing hearing, we conclude that any error committed by the district court in failing to inform Salva of the precise sentencing range to which he would be exposed was harmless, and we must, therefore, uphold the convictions. Fed.R. Crim.P. 11(h).

■ Like the Second Circuit in *Fernandez*, 877 F.2d at 1143–44, we decline to find that Rule 11 requires the court to *predict* the applicable sentencing range. We do, however, believe that defendants will be able to make more intelligent choices about whether to accept a plea bargain if they have as good an idea as possible of the likely Guidelines result. In this connection, we note the Sentencing Commission's policy statement[7] at section 6B1.1(c), which reads:

> The court shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(e)(1)(B), and

the court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report, unless a report is not required under § 6A1.1.[8]

### III.

■ Salva attacks the validity of his sentence on the cocaine charge because the district court calculated his base offense level by adding the amounts of cocaine associated with the dismissed charges to the three ounces involved in the charge of conviction. It is now the clear rule in this circuit that a court may consider activity of which the defendant has not been charged or convicted in determining the appropriate Guidelines sentence, so long as that activity is "part of the same course of conduct or common scheme or plan as the offense of conviction." Guidelines § 1B1.3(a)(2); *see United States v. White*, 888 F.2d 490 (7th Cir.1989) (interpreting Guidelines sections 1B1.3(a)(2) and 3D1.2); *United States v. Vopravil*, 891 F.2d 155, at 157–78 & n. 4 (7th Cir.1989) (same). Basing his determination on the remarks of counsel and the materials included in the presentence report, the district judge found an applicable sentencing range of 41 to 51 months imprisonment and departed downward, in accordance with the government's recommendation. R. 33 at 6–7.

■ While we conclude that the district court's findings of fact are not clearly erroneous and, therefore, must be upheld, we take this opportunity to state again the requirement that counsel include with his

---

the district judge might actually grant him probation.

**7.** The Sentencing Commission's manual explains that the policy statements concerning plea bargaining under the Guidelines are "a first step towards implementing 28 U.S.C. § 994(a)(2)(E)," and that these provisions have not yet been formally adopted. United States Sentencing Commission, *Guidelines Manual* 6.5 (Nov. 1989). The Commission has expressed its view that "[b]ecause of the difficulty in anticipating problems in [the area of plea bargaining], and because the sentencing guidelines are themselves to some degree experimental, sub-

stantive restrictions on judicial discretion would be premature at this stage of the Commission's work." *Id.*

**8.** The policy statement at section 6A1.1 would require preparation of a presentence report in all cases except for those in which the court finds sufficient information in the record to "enable the meaningful exercise of sentencing authority pursuant to 18 U.S.C. § 3553, and the court explains the finding on the record." Section 6A1.1 would bar the defendant from waiving preparation of a presentence report.

or her brief on appeal the particular transcript pages containing the district court's specific reasons for its sentence. In that connection, we reiterate our request that district courts endeavor to present their reasons for imposing sentence in some concise, easily accessible form. *White,* 888 F.2d at 495–96; *United States v. Miller,* 891 F.2d 1265, at 1270 n. 5 (7th Cir.1989).

The judgment of the district court is AFFIRMED.