UNITED STATES of America, Appellee,

v.

Mark Lynford DARMAND,
Defendant–Appellant.

No. 1625, Docket 93–1009.

United States Court of Appeals,
Second Circuit.

Argued June 8, 1993.

Decided Sept. 8, 1993.

F. Mac Buckley, Hartford, CT, for defendant-appellant.

Alex V. Hernandez, Asst. U.S. Atty., D.Conn., New Haven, CT (Albert S. Dabrowski, U.S. Atty., of counsel), for appellee.

Before: OAKES, WALKER and WOOD,* Circuit Judges.

OAKES, Circuit Judge:

Mark Lynford Darmand appeals from his sentence of ten years' imprisonment for conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 846 (1988), and for carrying a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Supp. III 1991). These convictions stemmed from two separate events: the first from a February 20, 1992 sale of $40 worth of crack cocaine to an undercover Bristol, Connecticut police officer; and the second from a November 8, 1991 raid on an apartment in a Bristol low-income housing project during which Darmand was found in possession of a gun and as much as 12.86 grams of crack cocaine. The District Court for the District of Connecticut, Ellen Bree Burns, *Judge,* imposed the ten-year sentence after Darmand pled guilty to these two counts; two other charges were dismissed as part of a plea agreement.

Darmand initially challenged only the district court's factual determination that 11.97 grams of the cocaine involved in the November offense were attributable to him. At oral argument, however, we requested additional briefing on two questions: (1) whether it was error to use the 12.86 grams of cocaine base involved in the November offense in applying the mandatory minimum sentence for sales of more than 5 grams of cocaine base under 21 U.S.C. § 841(b)(1) (1988 and Supp. III 1991) and 21 U.S.C. § 846 (1988), when the § 846 conspiracy conviction was based on the February sale of only .431 grams of cocaine base, and alleged a conspiracy to sell only these .431 grams; and (2) whether the 12.86 grams from the November transaction could be used, as relevant conduct, to calculate the base offense level for the February offense under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), and whether to do so the district court should have made an explicit finding that the two

transactions were "part of the same course of conduct or common scheme or plan as the offense of the conviction" under U.S.S.G. § 1B1.3 (1992) and that section's Application Note 3 (1992).

Having considered the supplementary briefing on these questions, we vacate the sentence and remand for resentencing. We conclude, and the government has conceded, that the statutory mandatory minimum should not have been imposed since the district court found that Darmand possessed less than 5 grams of cocaine in connection with the February conspiracy charge. We further find that, because the district court did not consider whether the two drug offenses were part of the same course of conduct or common scheme or plan in determining that the 12.86 grams in the November case could be considered in determining the base offense level for the February count, this issue should also be reconsidered on remand. However, we hold that the district court did not err in concluding that Darmand possessed all 12.86 grams involved on that occasion; consequently, this issue need not be revisited on remand.

### BACKGROUND

Darmand's troubles began (at least for purposes of this case), when, at approximately 8:00 p.m. on November 8, 1991, five or more Bristol, Connecticut police officers armed with a warrant used a battering ram to enter an apartment in a Bristol housing project occupied by Darmand and others. The housing complex consisted of a horseshoe shaped series of duplexes, opening onto a courtyard and street; drug activity, both indoors and outdoors, was common.

When the officers burst in, Darmand was in the kitchen, which contained much drug manufacturing paraphernalia and which had its own door to the outside. Darmand apparently ran for that door, but was grabbed by an Officer Barton, who shouted to the other officers that Darmand had thrown something out the kitchen door. An initial flashlight search turned up nothing, but a cursory

---

* Harlington Wood, Jr., Senior Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

search outside the apartment a few minutes later turned up a "golf-ball sized" package of cocaine, containing twelve rocks of crack cocaine weighing a total of at least 11.97 grams. The package was found in a pile of leaves three or four feet outside the kitchen door after the officers had stirred the pile up with a stick. In addition, Darmand was found to be carrying a 9 millimeter semiautomatic handgun, $390 in cash and four smaller rocks of cocaine weighing a total of .892 grams. This series of events led to Darmand's conviction for possession of a firearm in connection with a drug trafficking offense. An additional charge of possession of cocaine with intent to sell was dropped as part of the plea agreement.

In the second episode, on February 20, 1992, an undercover Bristol police officer bought two twenty-dollar rocks of crack cocaine from Darmand and an unidentified woman outside another apartment at the same housing project. These two rocks weighed .431 grams. After descriptions of Darmand and the woman were radioed to other officers, Darmand was arrested at his girlfriend's apartment in the complex. The officers found an additional 10 rocks of cocaine, weighing 8.88 grams, in a garbage can just outside her apartment door. This episode led to Darmand's conviction for conspiracy to possess with intent to distribute and to distribute cocaine. A sale count was dropped as part of the plea agreement.

The principal concern of all parties at the sentencing hearing was whether the 11.97 grams found outside the first apartment in November and the 8.88 grams found in the garbage can in February could be attributed to Darmand. Judge Burns found that the government had demonstrated, by a preponderance of the evidence, that Darmand had possessed all but the 8.88 grams found in the garbage can outside his girlfriend's apartment—including the 11.97 gram package Darmand allegedly threw out the door on November 8, 1991. The judge stated that she believed the officers' claim that Barton had seen Darmand throw something out the door, and said that the fact that the golf-ball sized package of cocaine was not found on top of the pile of leaves was not decisive,

because "[t]hings do filter down through the leaves." She concluded "I can and do find by a preponderance of the evidence that those twelve pieces of cocaine could be and are attributed to the defendant."

Judge Burns then imposed the mandatory minimum 5–year sentence set by the firearms statute for the firearms count. 18 U.S.C. § 924(c)(1). Relying on paragraphs 19–20 of the presentence report, which indicated that U.S.S.G. § 3D1.2 (1992) (the section dealing with convictions, rather than § 1B1.3, the section dealing with relevant conduct) required grouping the quantities involved in separate drug transactions, Judge Burns added the .431 grams involved in the February offense and the 12.86 grams involved in the November offense. Because the total exceeded 5 grams, she again followed the reasoning of the presentence report and sentenced Darmand for the February trafficking count to the mandatory minimum of five years set by 21 U.S.C. §§ 841(b)(1) and 846 for conspiracies to violate § 841(a) involving more than 5 grams of cocaine base. As the firearms statute requires that its mandatory minimum sentence be served consecutively to any other sentence, Judge Burns sentenced Darmand to 10 years' imprisonment, to be followed by five years' supervised release.

Darmand then filed this appeal.

## DISCUSSION

Our review of the sentencing proceedings reveals two errors in the sentencing on the February trafficking count. First, the district court apparently used the rules for grouping separate offenses, set forth in U.S.S.G. § 3D1.2, rather than those for including relevant conduct in determining the base offense level for one offense, set forth in U.S.S.G. § 1B1.3, in determining whether the additional cocaine involved in the November transaction should be used in determining the base offense level for the February offense. Secondly, after concluding that Darmand possessed .431 grams of cocaine as part of the February "offense of conviction" and 12.86 grams of cocaine in November, the district court concluded that § 841(b)(1) required imposition of a mandatory minimum

sentence of five years, because Darmand possessed more than 5 grams of cocaine.

We review the application of the mandatory minimum sentence first, since we need not consider the grouping rules under the Guidelines unless the mandatory minimum does not apply in this case.

### 1. Mandatory minimum of § 841(b)(1).

■ Unlike the Guidelines, which require a sentencing court to consider similar conduct in setting a sentence, the statutory mandatory minimum sentences of 21 U.S.C. § 841(b)(1) apply only to the conduct which actually resulted in a conviction under that statute. Thus, the district court erred in concluding that it should include the cocaine from the November episode not only as related conduct relevant to the base offense level for the February episode, but also in determining whether the mandatory minimum for the February offense applied.

We reason from the language of § 841(b)(1):

> any person who violates subsection (a) of this section [which bars possession of a controlled substance with intent to distribute] shall be sentenced as follows:
>
> .    .    .    .    .
>
> (B) In the case of *a violation* of subsection (a) of this section involving
>
> .    .    .    .    .
>
> (iii) 5 grams or more of a mixture or substance ... which contains cocaine base ...
>
> such person shall be sentenced to a term of imprisonment [of] not less than 5 years....

(emphasis added).

In short, the section indicates that the minimum applies to the quantity involved in the charged, and proven, violation of § 841(a). In this case, Darmand's violation of § 841(a) was found to involve only .431 grams. Consequently, the mandatory minimum should not have been imposed.

### 2. Relevant conduct.

■ However, on remand, the district court may consider whether the additional cocaine involved in the November transaction should be considered as relevant conduct in setting the base offense level. U.S.S.G. § 1B1.3. Section 1B1.3(a)(2) indicates that, "with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts [such as the possession and sale of drugs alleged here]," relevant conduct includes all acts of possession or sale "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *See also id.*, comment (n. 3) (1992) (drugs involved in additional sales which do not lead to convictions should be used to calculate base offense level under this provision); *id.* comment (n. 9) (1992) (defining "[c]ommon scheme or plan" and "[s]ame course of conduct"); *United States v. Schaper*, 903 F.2d 891, 897–99 (2d Cir.1990) (remanding for application of § 1B1.3 to determine whether additional drug sale was part of the same course of conduct or common scheme or plan, and noting that "a sentencing court must consider a defendant's involvement with quantities of narcotics not charged in the count(s) of conviction *when such conduct was undertaken in the same course of conduct as the offense of conviction,*" *Id.* at 898 (emphasis added)); *United States v. Copeland*, 902 F.2d 1046 (2d Cir. 1990) (upholding application of § 1B1.3 to uncharged drug offenses that were part of the same course of conduct).

The government argues that the district court implicitly conducted this analysis, as the court concluded that the cocaine involved in the November transaction should be included in the calculation of the offense level for the February offense. Our review of the sentencing proceedings, however, indicates that the district court may have assumed that U.S.S.G. § 3D1.2(d) (grouping rules for convictions), rather than U.S.S.G. § 1B1.3(a)(2) (relevant conduct), applied to this case. In particular, it appears that the district court, with the acquiescence of the parties, adopted the analysis of the pre-sentence report on this issue. *See* Government's Supplemental Appendix at 127 (transcript of sentencing hearing, referring to paragraph 20 of the presentence report); Government's Sealed Appendix at 8–9 (¶¶ 19–20 of presentence report, analyzing the case as though it

were governed by § 3D1.2(d), and making no mention of § 1B1.3).

The difference is significant because, while both sections require the addition of quantities of drugs involved in separate offenses to determine the offense level, they do so in different contexts and use different standards. Section 3D1.2(d), which deals with convictions, requires the sentencing court to group together all convictions for narcotics trafficking offenses. Section 1B1.3(a)(2), however, which deals with relevant conduct established by only a preponderance of the evidence, requires the sentencing court to determine, in addition, whether the additional conduct was "part of the same course of conduct or common scheme or plan as the offense of conviction."

There are reasons for this difference. First of all, § 3D1.2(d) deals with additional convictions, established by proof beyond a reasonable doubt, and for which the defendant is to be sentenced as part of a single hearing. Section § 1B1.3, however, may deal with conduct which has not led to a conviction or otherwise been established beyond a reasonable doubt. Here, for example, while Darmand was found guilty of possessing a firearm in connection with a drug trafficking offense in November, the district court determined that he possessed more than one gram of cocaine during that offense by only a preponderance of the evidence.

We think the Sentencing Commission could reasonably conclude that not all such conduct is relevant. In particular, the Commission apparently determined that a defendant whose drug sales are part of a common course of conduct deserves a more stringent sentence than one whose drug sales are not—perhaps because such a defendant is likely to be a more significant purveyor of narcotics or a more recalcitrant one. For example, a defendant who in 1990 once sold marijuana to a friend while at school in Texas, and then once in 1993 assisted a different circle of friends in selling cocaine in Connecticut, could well argue that the earlier marijuana sale was not part of the same course of conduct or common scheme or plan; a defendant who on Monday and Tuesday sold part of one shipment of drugs to the same buyer

in the same place and for the same purpose would have more difficulty arguing that the sales were unconnected. Similarly, Darmand may have committed drug offenses on only these two occasions four months apart, or at sporadic, unconnected, intervals in between without establishing himself as part of a network of dealers and suppliers in the Bristol area; alternatively, he may have been selling cocaine as part of such a network more or less steadily, or whenever he felt he needed the cash, throughout this period. While we do not conclude that in the first scenario, the district court need determine that the sales were not relevant conduct, or in the second that they were, we do think these are considerations the district court could take into account in the § 1B1.3 analysis, and that it should be given the opportunity to do so on remand.

In support of this interpretation, we note that the Commission requires that other types of offenses be part of a single course of conduct for purposes of grouping under § 3D1.2(b). This ensures that a defendant who committed two robberies, say, is treated as a more serious offender than someone who committed only one but who was convicted of several offenses as a result. Thus, the Commission's failure to use the "same course of conduct or common scheme or plan" language in § 3D1.2(d) and decision to add it to § 1B1.3(a)(2) appears to reflect an explicit determination that the two standards are not the same. *See also United States v. Concepcion,* 983 F.2d 369, 386–89 (2d Cir.1992) (noting extraordinarily harsh results that can occur when unconvicted conduct is used to enhance a sentence under the Guidelines, and remanding for consideration of whether a downward departure should be made based on particular facts of case), *cert. den.,* ____ U.S. ____, 114 S.Ct. 163, ── L.Ed.2d ── (1993); *id.,* 983 F.2d at 393–94 (Newman, J., *concurring*) (urging reconsideration of the Guidelines because they may produce sentences following acquittal on some counts that are as long as they would be had a defendant been convicted of all counts), and *United States v. Frias,* 983 F.2d 369 at 395–96 (Newman, J., dissenting from denial of rehearing en banc in *Concepcion*) (same).

Darmand also argues that the additional cocaine should not be used since his five-year sentence for the firearms count is predicated on that count being associated with a drug trafficking offense. Thus, he claims, to include the full amount of cocaine involved in that transaction as relevant conduct in the additional count would be to sentence him twice for the same underlying narcotics offense. However, had Darmand been convicted of possession with intent to sell as well as of the firearms offense for the November conduct, the district court would have been obliged to consider these offenses separately. U.S.S.G. § 3D1.1, comment (n. 1) (1992). Consequently, we are not persuaded by this argument.

Accordingly, we remand for district court determination of whether the November possession with intent to sell was part of the same course of conduct or common scheme or plan as the February offense of conviction, and thus whether the 12.86 grams involved on that occasion should be used as relevant conduct in the sentencing determination.

### 3. Review of factual determinations.

Darmand also argues that Judge Burns clearly erred in concluding that the 11.97 grams of cocaine found outside the raided apartment in November were his. Darmand points out that it was dark, thus making it difficult for the officers to tell what had happened; that the pile of leaves in which the package of cocaine was found was in the courtyard of a large housing project in which substantial drug activity by others took place; that the package was not on top of the pile; that the officer who actually claimed to have seen Darmand throw something was not present at the sentencing hearing and that the testimony of some of the other officers was not entirely supportive of the prosecution's interpretation of the facts; that the rocks found outside were larger than, and wrapped differently from, the rocks Darmand had in his pocket; and that Darmand was not a resident of the apartment being searched and was not named in the warrant. On the other hand, Darmand was the only one in the kitchen, where all of the drug manufacturing paraphernalia was found, while everyone else was in the bedroom and living room, most of them apparently smoking crack; he was the only one in the apartment with money on him ($390); an expert testified that, at well over 200 pounds in November, he looked far too fat and healthy to be a serious consumer of crack, belying his argument that he was there only as an addict; and the package was found 3–4 feet outside the kitchen door after a cursory search. Darmand claimed at the hearing that he had not even managed to get the screen door open; but the district court could have believed instead the officers' testimony that he had been seen throwing something outside. Further, while Darmand noted that he had not thrown away the handgun or the four small rocks of cocaine found in his pocket, the district court reasonably could have concluded that, since Darmand had only a few seconds to get rid of whatever he could, he simply did not manage to throw these items away as well.

Consequently, we think the district court acted within its discretion in attributing the additional 11.97 grams of cocaine to Darmand.

### 4. Arguments for departure from the Guidelines range.

Both Darmand and the government argue that they would have pressed for departures from the Guidelines sentence had they realized that the mandatory minimum sentence of 21 U.S.C. § 841(a)(2) did not apply. We see no reason why such arguments should not be considered on remand.

### CONCLUSION

Accordingly, we reverse and remand for resentencing consistent with this opinion.