**UNITED STATES of America**

v.

**Edward MONOCCHI and Robert Sicignano.**

**No. 3:92–CR–41 (JAC).**

United States District Court, D. Connecticut.

Nov. 2, 1993.

Alex V. Hernandez, Asst. U.S. Atty., New Haven, CT, for Government.

Richard A. Reeve, Asst. Federal Public Defender, New Haven, CT, for defendant Edward Monocchi.

Timothy P. Pothin, New Haven, CT, for defendant Robert Sicignano.

*RULING ON DEFENDANTS' MOTION TO DETERMINE APPLICABILITY OF MANDATORY MINIMUM SENTENCING PROVISIONS*

JOSÉ A. CABRANES, Chief Judge:

The question presented is whether the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) [1] may apply to a

involving...

---

**1.** 21 U.S.C. § 841(b)(1)(B) provides: "In the case of *a violation* of subsection (a) of this section

conspiracy charge when no single substantive distribution with which the defendants have been charged involves 500 grams or more of cocaine, and whether that question is ripe for decision before the defendants have been found guilty of the conspiracy charge either by a jury or by virtue of a plea of guilty.

Pending before the court is Edward Monocchi's Motion to Determine Applicability of Mandatory Minimum Sentencing Provisions (filed Dec. 31, 1992), which was adopted on October 7, 1993 by Robert Sicignano, and on which the court held oral argument on October 20, 1993.

## BACKGROUND

Count One of the First Superseding Indictment (the "Indictment")[2] charges the defendants with a single count of conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846[3] and 841(a)(1).[4] The conspiracy, which allegedly occurred between June 25, 1991 and June 5, 1992, includes other narcotics distribution charges pending against the defendants. These narcotics offenses charge the defendants with possession of cocaine with intent to distribute and distribution of cocaine in violation of § 841(a)(1). None of the substantive of-

fenses involved an amount of 500 grams or more of cocaine; rather, these offenses were aggregated to reach the 500 gram or more amount charged in the conspiracy count.

## DISCUSSION

Inasmuch as the defendants' motion raises issues involving sentencing, the threshold question is whether this motion, presented in advance of a finding of guilty, is ripe for decision.

### I.

■ In determining whether a matter is ripe for decision, a court looks to (1) "the fitness of the issue for review," and (2) "the hardship to the parties of withholding consideration." *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1146 (2d Cir.1993) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). *See also AMSAT Cable Ltd. and Stamford Apartments Co. v. Cablevision of Connecticut Limited Partnership, et al.*, 6 F.3d 867, 872 (2d Cir.1993) ("[W]e look, first, to whether the issue is fit for review and, second, to the hardship to the

---

(ii) 500 grams or more of a mixture or substance containing a detectable amount of....

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers...

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years.... *If any person commits such a violation after one or more prior convictions* for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, *such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment....*" (emphasis added).

**2.** Count One of the Indictment charges: "From approximately June 25, 1991 to on or about June 5, 1992, in the District of Connecticut, the defendants... Robert Sicignano [and] Edward Monocchi... knowingly and intentionally *conspired* together and with one another to possess with intent to distribute and to distribute *500 grams or more of a mixture and substance containing a*

*detectable amount of cocaine*, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Section 841(a)(1). All in violation of Title 21, United States Code, Section 846." (Emphasis added).

**3.** 21 U.S.C. § 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

**4.** 21 U.S.C. § 841(a) provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."

21 U.S.C. § 802(6) defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1954."

parties of withholding review.") A court should resolve this two-step inquiry "pragmatically." *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d at 1146.

First, the defendants argue that their motion is "fit for review" because the amount of cocaine involved in the conspiracy count is an essential element of that count. *See* Defendants' Memorandum in Support of Motion to Determine Applicability of Mandatory Minimum Sentencing Provisions (filed Dec. 31, 1992) at 1. The Government counters that the amount of cocaine which is the subject of the count of conviction is not an element of the offense, and need not even be alleged in the indictment. Because the basis on which the defendants seek review of their motion is incorrect, the Government rejects the defendants' claim that their motion is ripe for decision. *See* Government's Response to Defendant's "Motion to Determine Applicability of Mandatory Minimum Sentencing Provisions" (filed Jan. 7, 1993) at 4–5.

█ The court agrees with the Government that the quantity of narcotics involved in a count of conviction is not an element of the offense. *See United States v. Pico*, 2 F.3d 472, 475 (2d Cir.1993) (citing *United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990)). As a result, the quantity of narcotics need not be stated in the indictment. *Id.* Therefore, the defendants' claim that the court must determine how much cocaine is attributable to them because that amount is an essential element of the offense must fail.

Second, the defendants argue that their motion is "fit for review" because Rule 11(c)(1) of the Federal Rules of Criminal Procedure requires the court to advise them of "the mandatory minimum penalty provided by law," before accepting their guilty pleas.[5] Defendants frequently invoke Rule 11(c)(1) *after* they have pled guilty, as a ground for challenging their sentences on appeal. *See e.g., United States v. Pico*, 2 F.3d at 475 (defendant challenged his sentence on appeal, claiming that the notice provided to him pursuant to Rule 11(c)(1) was deficient); *United States v. Fernandez*, 877 F.2d 1138, 1139 (2d Cir.1989) (same); *United States v. Salva*, 902 F.2d 483, 484 (7th Cir.1990) (same). In this case, the defendants merely ask that the court determine whether the mandatory minimum sentence may apply *before* they enter into plea discussions or agreements. *See* Defendants' Memorandum in Support of Motion for Continuance and Ruling on Mandatory Minimum Before Plea or Trial (filed Sept. 10, 1993) ("Defendants' Memorandum in Support of Motion for Continuance") at 3–4.

While this may appear to be an unusual request, it has been discussed with approval in a case involving a dispute over the applicable Sentencing Guidelines range. In *United States v. Salva*, 902 F.2d at 488, the Court of Appeals for the Seventh Circuit recognized that, under certain circumstances, it may be appropriate under Rule 11(c)(1) for a district court to defer its decision to accept or reject a plea until there has been an opportunity to review the presentence report and inform the defendant of the applicable Sentencing Guidelines range.[6] The *Salva* court reasoned that "defendants will be able to make more intelligent choices about whether to accept a plea bargain if they have as good an idea as possible of the likely Guidelines result." *Id.*

**5.** Rule 11(c) of the Federal Rules of Criminal Procedure provides: "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, *the mandatory minimum penalty provided by law*, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to

consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense...." (emphasis added).

**6.** Based on the facts of that case, however, the Court of Appeals found that the district court was not *required* to defer its decision to accept or reject the defendant's guilty plea. *United States v. Salva*, 902 F.2d at 488.

It seems clear that defendants are also more likely to make intelligent choices about pleading guilty if they have as good an idea as possible of whether a statutory minimum sentence is applicable. Rule 11(c)(1) reflects the importance of apprising defendants of the minimum sentence that may be imposed. The purpose of Rule 11(c)(1) is to insure that a defendant is aware of the range of punishments to which he is subject, and that he is making an informed plea. *See United States v. Fernandez*, 877 F.2d at 1143 (citing *Coleman v. Alabama*, 827 F.2d 1469, 1473 (11th Cir.1987), and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).

At oral argument in the instant case, the Government questioned whether Rule 11(c)(1) applies at this time because the defendants have not yet decided to plead guilty, and the court is not in a position to accept or reject their guilty pleas. Rule 11(c)(1) does not appear to restrict when the court's notice that a mandatory minimum sentence applies may be provided to the defendant. *See United States v. Pico*, 2 F.3d at 475 (Rule 11(c)(1) was satisfied by notice that the ten-year mandatory minimum sentence applied which was provided in the plea agreement signed by the defendant, and provided by the defendant's attorney, in addition to the notice provided by the court at a hearing prior to accepting the defendant's guilty plea). Furthermore, the court finds that the purpose of Rule 11(c)(1) will be served by resolving the defendants' motion at this time because the resolution is likely to make fully comprehensible any subsequent guilty pleas. Viewing the ripeness inquiry "pragmatically," as we have been enjoined to do, *see In re Drexel Burnham Lambert Group Inc.*, 995 F.2d at 1146, the court finds that the defendants' motion is indeed "fit for review."

Furthermore, the court finds that withholding consideration of the issue presented by the defendants' motion would produce hardship for the defendants—thus satisfying the second prong of the ripeness inquiry. If the court were to refuse to act on the defendants' motion, they would be left to negotiate their pleas amidst uncertainty. As the defendants have described the situation, they would effectively be playing a game of "Russian Roulette": it is possible that they might be pleading to a mandatory minimum sentence, but it is also possible that they would not face such a mandatory minimum term. *See* Defendants' Memorandum in Support of Motion for Continuance at 2. The court can readily avoid this difficult situation by addressing the question raised by the defendants' motion.

Accordingly, applying pragmatically the two-step ripeness test enunciated by our Court of Appeals, the court finds that the defendants' motion is ripe for decision.

## II.

The question on the merits presented by the defendants' motion is whether the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) may apply to a conspiracy charge when no single substantive distribution with which the defendants have been charged involves 500 grams or more of cocaine.

The parties agree that the following statutory sections are relevant to this issue: Under 21 U.S.C. § 846, conspiracy is "subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."[7] In narcotics distribution cases, the language of the conspiracy statute directs a court to § 841. Section 841(a) defines substantive narcotics offenses and prohibits anyone from knowingly or intentionally manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled substance.[8] Section 841(b)(1) sets forth the penalty provisions for a violation of § 841(a). The provision at issue here is § 841(b)(1)(B), which authorizes a mandatory minimum sentence of ten years for "a violation of subsection (a)" involving 500 grams or more of cocaine, with one prior drug conviction.[9]

---

**7.** *See supra* at note 3.

**8.** *See supra* at note 4.

**9.** *See supra* at note 1.

## A. Interpretation of 21 U.S.C. § 841(b)(1)(B)

On the defendants' reading, § 841(b)(1)(B) is inapplicable by its own terms. Section 841(b)(1)(B) requires "a violation" of subsection (a) that involves 500 grams or more of cocaine.[10] The defendants interpret the words "a violation" to mean a single substantive violation which itself exceeds 500 grams. See Defendants' Reply to Government's Response to Mandatory Minimum Motion (filed Jan. 26, 1993) at 2; Defendants' Second Supplemental Memorandum Re: Applicability of Mandatory Minimum (filed Sept. 27, 1993) ("Defendants' Second Supplemental Memorandum") at 4–5. They urge the court to adopt this interpretation because, they assert, Congress did not clearly authorize the application of the mandatory minimum sentence in circumstances such as these. Furthermore, the defendants argue that this interpretation would accord with the rule of lenity, the principle that courts should construe ambiguous criminal statutes in favor of criminal defendants. See United States v. Chapman, 500 U.S. 453, ——, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991); Huddleston v. U.S., 415 U.S. 814, 830–31, 94 S.Ct. 1262, 1271–72, 39 L.Ed.2d 782 (1974).

The Government contends that the Court of Appeals has foreclosed the defendants' interpretation of § 841(b)(1)(B), pointing to two recent decisions, United States v. Martinez, 987 F.2d 920 (2d Cir.1993) and United States v. Darmand, 3 F.3d 1578 (2d Cir. 1993). In the Government's view, these cases, taken together, hold that where a defendant (1) participates in a conspiracy to distribute cocaine, (2) more than 500 grams of cocaine are distributed during the course of the conspiracy, and (3) the amount of cocaine was reasonably foreseeable by the defendant, the statutory mandatory minimum term of incarceration will apply to the conspiracy which is the offense of conviction. Because the defendants allegedly satisfy these three conditions, the Government argues that the mandatory minimum sentence applies to them. See Government's Memorandum of Law in Response to Defendant Monocchi's Memoranda Regarding Applica-bility of Mandatory Minimum (filed Sept. 27, 1993) ("Government's Response Memorandum") at 2.

The defendants respond that Martinez and Darmand do not mandate the application of the statutory minimum sentence. The defendants contend that in Martinez, the Court of Appeals recognized that Congress purposefully amended § 846 in 1988 to equalize the penalties applicable to conspiracies and the underlying offenses. Thus, the defendants argue, Martinez would not support the imposition of a greater penalty for the conspiracy charge than for the underlying offenses, as would result in this case if the mandatory minimum sentence is applied to the conspiracy charge. See Defendants' Supplemental Memorandum Regarding Applicability of Mandatory Minimum (filed Aug. 10, 1993) ("Defendants' Supplemental Memorandum") at 2–6. The defendants argue that Darmand supports their position that a court cannot aggregate substantive offenses prosecuted under § 841(a). Indeed, according to the defendants, the district court in Darmand was reversed for aggregating offenses. See Defendants' Second Supplemental Memorandum at 2–4.

The court disagrees with the defendants' interpretation of both Martinez and Darmand, and consequently, with their interpretation of § 841(b)(1)(B). While neither Martinez nor Darmand address the precise issue raised by the defendants, the two cases, taken together, support the conclusion that the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) may indeed apply to a conspiracy charge even though no single distribution involved 500 grams or more of cocaine.

In Martinez, the defendant joined an ongoing conspiracy, which had already distributed four kilograms of cocaine. When the defendant joined the conspiracy, he provided one additional kilogram of cocaine. Upon his conviction of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), the district court determined that because the conspiracy involved a total of five kilograms or more, the defendant was subject to

---

10. See supra at note 1.

the statutory minimum ten-year term of incarceration.

On appeal, the defendant maintained that the cocaine distributed by the conspiracy before he joined could not be used to trigger the mandatory minimum sentence. The Court of Appeals reversed the sentence and remanded the case to the district court for further proceedings to determine whether the defendant could have reasonably foreseen the amount of cocaine which had been distributed by the conspiracy before he joined it. The *Martinez* decision, therefore, suggests that a sentencing court may aggregate the amount of cocaine distributed during the course of a conspiracy that is reasonably foreseeable by the defendant.[11]

In *Darmand*, the defendant pled guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of carrying a firearm during and in relation to a narcotics trafficking offense in violation of 18 U.S.C. § 924(c)(1). The amount of cocaine involved in the one-day narcotics conspiracy was less than five grams. However, on a prior occasion, the defendant had been charged with possession with intent to distribute more than five grams of cocaine. Although the defendant was never convicted of this prior charge, the district court added the quantity involved in that earlier transaction to the quantity in the charged offense, and sentenced the defendant to a five-year mandatory minimum term of incarceration under § 841(b)(1)(B) for a violation of §§ 846 and 841(a) involving more than five grams of cocaine.[12]

The Court of Appeals in *Darmand* found that it was error to aggregate the two quantities of cocaine in that case and to impose the five-year statutory mandatory minimum sentence for the conspiracy. The *Darmand* court reasoned that the plain language of § 841(b)(1) "indicates that the [statutory] minimum [sentence] applies to the quantity involved in *the charged, and proven, violation of § 841(a)*." *United States v. Darmand*, 3 F.3d at 1581 (emphasis added). Since the prior offense was not part of the "charged, and proven, violation of § 841(a)" in that case—*i.e.*, the prior offense was not charged as part of the conspiracy and did not actually result in a conviction under § 841(a)—the Court of Appeals found that the sentencing court should not have included it in the mandatory minimum sentence computation under § 841(b)(1)(B).[13] This result suggests that if the prior offense had been a part of the conspiracy for which the defendant was convicted, that quantity could have been aggregated and the sentencing court could have imposed the mandatory minimum sentence.

It follows from *Martinez* and *Darmand* that if (1) a defendant is convicted of a count charging him with participation in a conspiracy to distribute an aggregate quantity of 500 grams or more of cocaine, and (2) the defendant could have reasonably foreseen that he was participating in a conspiracy of that magnitude, he would be exposed to the statutory minimum sentence prescribed in § 841(b)(1)(B). Here, the defendants are charged in Count One of the Indictment with a conspiracy involving 500 grams or more of cocaine. The conspiracy encompasses a number of transactions, and while none of

---

11. The defendant correctly states that the *Martinez* court acknowledged that Congress amended § 846 in 1988 to equalize the penalties applicable to conspiracies and the underlying offenses. *See Martinez*, 987 F.2d at 924. However, the Court of Appeals neither stated nor implied that the amended version of § 846 mandates equal penalties or prohibits aggregation. The Court of Appeals only found that § 846, as amended, was not intended to expand the defendant's liability to include crimes committed by other members of the conspiracy, without regard to the defendant's own knowledge of those crimes. *Martinez*, 987 F.2d at 924–26.

12. The district court in *Darmand* also sentenced the defendant to a five-year mandatory term of incarceration for the firearms count under 18 U.S.C. § 924(c)(1). Because the firearms statute requires that its mandatory minimum sentence be served consecutively to any other sentence, the district court sentenced the defendant to a total mandatory term of ten years imprisonment. *United States v. Darmand*, 3 F.3d at 1580.

13. The Court of Appeals held, however, that the district court may consider whether the prior offense was "relevant conduct" in setting the base offense level under Guideline § 1B1.3. *United States v. Darmand*, 3 F.3d at 1580.

these transactions individually exceeds 500 grams, the aggregate quantity does exceed 500 grams. Unlike *Darmand*, where prior transactions outside the scope of the charged conspiracy were aggregated to reach the mandatory minimum amount, all of the aggregated offenses in the instant case are charged in the conspiracy count.

Nor is this a case like *Martinez*, where it was uncertain whether the amount of cocaine involved was reasonably foreseeable by the defendants. Unlike *Martinez*, neither of the defendants in the instant case claim that they joined the conspiracy alleged here after the distribution of any of the aggregated amounts. Furthermore, at oral argument, the defendants conceded that the reasonable foreseeability of the quantity of cocaine involved is not an issue at this stage of the case.

■ In any event, the court need not determine at this time whether all of the amounts involved in the conspiracy were reasonably foreseeable by the defendants. As *Martinez* itself makes clear, the defendants remain free to challenge the reasonable foreseeability of any of the amounts of cocaine attributable to them at their sentencing hearings. *See United States v. Martinez*, 987 F.2d at 926. The only question ripe for decision at this time is whether individual transactions which involve less than 500 grams of cocaine may be aggregated to reach the 500 gram amount charged in the conspiracy for purposes of the mandatory minimum sentencing provisions of § 841(b)(1)(B)—a question of law. Whether or not each individual transaction will actually be aggregated in calculating the defendants' sentences is a factual determination properly addressed to the court at the time of sentencing. It is sufficient for purposes of this motion that the court determine that individual transactions which involve less than 500 grams of cocaine *may be aggregated* to reach the 500 gram amount charged in the conspiracy, *provided*

that those transactions were reasonably foreseeable by the defendants.

For all the foregoing reasons, the court finds that the mandatory minimum sentence provisions of 21 U.S.C. § 841(b)(1)(B) may apply to the conspiracy count.

### B. Analogy to U.S.S.G. § 3D1.2(d)

This conclusion is not altered by the defendants' argument based on U.S.S.G. § 3D1.2(d). Section § 3D1.2(d) governs the "grouping" of narcotics offenses.[14] *See* Application Note 6, U.S.S.G. § 3D1.2. Under § 3D1.2(d), a court must break down a conspiracy to commit several substantive offenses into discrete conspiracies, and then determine if these discrete conspiracies ought to be grouped together. *See* Application Note 8, U.S.S.G. § 3D1.2. Application Note 8 provides the following example: a defendant is convicted of two counts, (1) conspiring to commit offenses A, B, and C and (2) committing offense A. The sentencing court, according to Application Note 8, should actually treat this as if the defendant were convicted of four separate "counts": (1) committing offense A, (2) conspiracy to commit offense A, (3) conspiracy to commit offense B, and (4) conspiracy to commit offense C. The sentencing court would then determine if any of these four "counts" should be grouped together, and sentence the defendant accordingly. In this example, "counts" (1) and (2), which both concern offense A, would be grouped together. *See* Application Note 8, U.S.S.G. § 3D1.2.

The defendants argue that the court should apply this analysis in the context of the statutory minimum sentence provisions. Specifically, the defendants contend that the court should break down Count One of the Indictment into separate conspiracies to commit the individual underlying narcotics offenses. Because each discrete conspiracy would involve less than 500 grams of cocaine, the defendants argue that the mandatory

---

14. U.S.S.G. § 3D1.2 states in pertinent part: "All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule...
   (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline to cover such behavior...."

minimum sentencing provisions would not apply. *See* Defendants' Supplemental Memorandum at 5.

The Government disagrees with the defendants' Sentencing Guidelines analysis. The Government argues that after calculating a defendant's offense level pursuant to § 3D1.2(d), a sentencing court must look to § 3D1.3(b).[15] Under the latter provision, a sentencing court must determine the defendant's offense level by aggregating the quantities of narcotics pursuant to § 2D1.1,[16] making any necessary adjustments under Parts A, B, and C of Chapter Three. The sentencing court must then compare the two offense levels and apply whichever is higher. In this case, the Government argues that the offense level produced by aggregating the substantive distributions would apply. *See* Government's Memorandum of Law in Response at 6–7.

The court need not consider the proper application of the grouping rules under the Sentencing Guidelines because it has already determined that the mandatory minimum sentence may apply under *Martinez* and *Darmand.* However, it bears noting that even if the defendants were correct in their analysis of the Sentencing Guidelines, the Court of Appeals has recognized that the Sentencing Guidelines are not always relevant in determining whether the statutory mandatory minimum sentencing provisions apply. *See United States v. Darmand,* 3 F.3d at 1580 ("relevant conduct" analysis under the Sentencing Guidelines is not relevant to determining whether the mandatory minimum sentencing provisions of § 841(b)(1) apply because, unlike the Sentencing Guidelines, the provisions of § 841(b)(1) only apply to the conduct which actually resulted in a conviction under that statute). Moreover, the proper application of the grouping rules under the Sentencing Guidelines is one of the more obscure corners of a labyrinthine regulatory system—a fact that counsels against the extension of the grouping rules to the context of mandatory minimum sentences.

## C. "Sentencing Entrapment"

The defendants argue that even if *Martinez* and *Darmand* suggest that the mandatory minimum sentence may apply, it is not applicable here because they were victims of "sentencing entrapment" or "sentencing factor manipulation." According to the defendants, law enforcement agents knowingly and intentionally conducted a drug deal with them for the purpose of putting them over the 500 gram floor. The defendants maintain that after the Government had substantially concluded their investigation of them, law enforcement agents conducted an additional drug deal with them that was twice as large as any previous drug deal, which had the effect of putting them over the 500 gram floor. If this final drug deal had not taken place, or if it had been only half as large, the defendants would not be facing a possible mandatory minimum sentence. *See* Defendants' Second Supplemental Memorandum at 10–14.

The Government argues that the defendants' "sentencing entrapment" argument is, at best, premature. According to the Government, the Sentencing Guidelines and the applicable case law allow a defendant to challenge the quantity of cocaine attributable to him at sentencing, and not before that time. *See* Government's Memorandum in Response to Defendant Monocchi's "Second Supplemental Memorandum Re: Applicability of Mandatory Minimum" (filed Oct. 19, 1993) at 2. Furthermore, the Government contends that the final drug transaction was not conducted for the purpose of entrapment, but for legitimate law enforcement objectives. *Id.* at 2–6.

■ Courts have developed the doctrine of "sentencing entrapment" or "sentence factor

---

**15.** U.S.S.G. § 3D1.3(b) provides: "In the case of counts grouped together pursuant to § 3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two [where § 2D1.1 is to be found] and Parts A, B and C of Chapter Three. When the counts involve offenses of the same general type to which different guidelines apply ... apply the offense guideline that produces the highest offense level."

**16.** Application Note 6 to U.S.S.G. § 2D1.1 provides: "Where there are multiple transactions or multiple drug types, the quantities of drugs are to be added...."

manipulation" in response to the potential for abuse inherent in the Sentencing Guidelines, particularly in narcotics cases, where the quantity of drugs involved in separate offenses determines the offense level. *See e.g.,* U.S.S.G. § 1B1.3; U.S.S.G. § 3D1.2(d). This creates the potential for "situations in which the government engages in continuing undercover or sting transactions for the sole purpose of ratcheting up a sentence under the guidelines." *United States v. Shephard,* 4 F.3d 647, 649 (8th Cir.1993). *See also United States v. Barth,* 990 F.2d 422, 424–25 (8th Cir.), *reh'g en banc denied* (May 25, 1993) (defendant failed to establish sentencing entrapment so as to warrant a downward departure from the Sentencing Guidelines on grounds that police continued to purchase drugs from him until they had purchased over fifty grams); *United States v. Connell,* 960 F.2d 191, 194–96 (1st Cir.1992) (despite defendant's claim of sentencing entrapment, the evidence showed that defendant carried out the final drug assignment with full knowledge that he was handling drug money, and thus, five-level increase on the ground that he knew or believed that laundered funds were criminally derived property was appropriate). Such a situation may justify a downward departure from the Sentencing Guidelines. *See United States v. Barth,* 990 F.2d at 424–25.

■ The defendants argue, and the court acknowledges, that the potential for "sentencing entrapment" exists also in the context of statutory minimum sentences. Like the Sentencing Guidelines, the statutory minimum sentence statutes frequently require the aggregation of individual offenses. Despite the potential for abuse, however, the defendants have failed to prove on this record that such entrapment took place here.

Of course, the defendants remain free to challenge the quantity of cocaine attributable to them at sentencing. *See United States v. Caba,* 955 F.2d 182, 186–87 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992). If the defendants plead guilty or are convicted after trial, the United States Probation Office will prepare a presentence investigation report ("PSI") calculating the defendants' base offense level.

The defendants may then challenge any findings or recommendations appearing in the PSI, including any questions regarding specific quantities of cocaine properly attributable to them. Accordingly, based on the record to date, the court must find that the defendants' request to disregard the mandatory minimum sentence on the basis of "sentencing entrapment" fails.

## CONCLUSION

For the reasons stated above, the defendants' Motion to Determine the Applicability of the Mandatory Minimum Sentencing Provisions (filed Dec. 31, 1993) (doc #31) is GRANTED: the court finds that (1) the defendants' motion is ripe for decision; and (2) the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) may apply, in the circumstances presented here, to a conspiracy charge when no single substantive distribution with which the defendants are charged involves 500 grams or more of cocaine.

It is so ordered.